**STANARD v. CANTWELL.   (No. 2707.)**

(Court of Civil Appeals of Texas. Amarillo. June 16, 1926. Rehearing Denied June 30, 1926.)

**1. Garnishment ⚖⇒105.**

A garnishor stands in shoes of the debtor and cannot assert defenses that debtor could not.

**2. Corporations ⚖⇒661(6).**

Obtaining permit by foreign corporation to do business in state, as required by Vernon's Ann. Civ. St. 1925, arts. 1529, 1536, is condition precedent to right to sue in state courts.

**3. Corporations ⚖⇒648—Assignee of foreign corporation, not licensed to do business in Texas, held without right to intervene to assert ownership to funds impounded (Vernon's Ann. Civ. St. 1925, arts. 1529, 1536).**

Where foreign loan corporation was not licensed under Vernon's Ann. Civ. St. 1925, arts. 1529, 1536, to do business in Texas, assignee of its real estate mortgages, charged with knowledge thereof, could not intervene in garnishment proceeding to claim moneys impounded therein belonged to him under trust agreement with corporation.

**4. Corporations ⚖⇒648—Where assignee of unlicensed foreign corporation was not authorized to sue, his petition to intervene in garnishment proceeding should have been dismissed.**

Since assignee of mortgages of foreign loan corporation, which was not licensed to do business in Texas, could not sue thereon, judgment should have disposed of care as to him by dismissing his petition to intervene in garnishment proceeding.

**5. Costs ⚖⇒238(2)—Where matter of dismissing intervention was brought to attention of neither trial nor appellate courts by intervener, plaintiff in garnishment was not chargeable with costs of appeal.**

Where trial court erred in not dismissing intervention in garnishment proceeding and matter of rendition of judgment on appeal against intervener was not raised at trial nor brought to attention on appeal by intervener, plaintiff in garnishment is not chargeable with costs of appeal.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Suit by A. L. Cantwell against the Conservative Loan Company of Texas, in which a writ of garnishment was issued against the First National Bank of Plainview, and in which E. C. Stanard, trustee, intervened. From a judgment for plaintiff against the garnishee and intervener, the latter appeals. Judgment reversed and reformed, and as reformed affirmed. Intervener's suit dismissed, and judgment rendered for plaintiff.

Graham & Graham, of Plainview, for appellant.

Williams & Martin, of Plainview, for appellee.

RANDOLPH, J. A. L. Cantwell brought suit in the district court of Hale county, Tex., against the Conservative Loan Company of Texas, for commissions alleged to be due him from said company, hereinafter styled the Texas Company, and, pending such suit, procured the issuance of a writ of attachment in said cause, and thereafter procured the issuance of a writ of garnishment in said cause, which writ of garnishment was directed against the First National Bank of Plainview, Tex. By such writ there was impounded funds in the possession of said bank, which the bank, by its answer duly filed, admitted having in its custody. This money was paid into the registry of the court by the bank, amounting to $997.40, which it paid subject to the orders of the court.

E. C. Stanard, of Shawnee, Okl., intervened in said garnishment suit and asserted his right and title to said fund as trustee for certain bondholders of the Conservative Loan & Trust Company of Oklahoma, a corporation organized under the laws of the state of Oklahoma, which company is hereinafter designated the Oklahoma Company.

The court, without the intervention of a

(286 S.W.)

jury, tried out the issues in the garnishment suit after consolidating it with the original suit for debt in the same court, and rendered judgment that the intervener, E. C. Stanard, take nothing by his plea of intervention, and that the plaintiff, Cantwell, do have and recover of and from the First National Bank of Plainview, Tex., and of and from the intervener, E. C. Stanard, the said sum so held by said bank and which had been paid into court by the bank, to wit, the sum of $997.40. From this judgment the intervener has appealed to this court.

The Conservative Loan & Trust Company, as stated above, was an Oklahoma corporation, which was engaged in the business of loaning money on land security. It sought to engage in business in the state of Texas, and for that purpose employed Groves & Cantwell, a partnership, as its local agents. Said company was advised by its attorney, C. D. Russell, of Plainview, that it could not legally transact such business in Texas without first securing a permit, and he suggested that the most satisfactory plan would be for the interested parties to form a Texas corporation. Judge Russell was on the stand as a witness and testified that the parties who were in consultation with him, and who were officers of the Oklahoma company, said that at the time they were formerly doing business in Texas, they had organized a Texas company with general offices at Wichita Falls, Tex., but they were of the opinion that the charter of the concern had been forfeited. They later wrote Russell that the charter had not been forfeited but was still alive and there was no necessity for taking any further steps; that "Conservative Loan Company of Texas" was the name of the concern; and that they were ready for business under that name. He also testified that he addressed all of his opinions of titles of property to the Texas Company and that all deeds of trust made out for loans were made to the same company.

One Annetta Berry, joined by her husband, M. J. Berry, applied through Groves & Cantwell, or through Cantwell, for a loan from said Texas Company, and executed notes therefor, payable to said Texas Company, together with deeds of trust upon land in Hale county to secure their payment, in which deeds of trust the Texas Company was made the beneficiary.

Pending the negotiations for the loan from said Texas Company, a party by the name of Britton purchased said land from Berry and wife, and became responsible for the repayment of said loan.

The notes executed by Berry and wife and payable to the order of the Texas Company, consisted of one principal note in the sum of $12,800 and five commission notes, each in the sum of $384. The principal note was secured by a deed of trust, as stated above, upon the land sold by Berry and wife to Britton, which was a first lien on the land, and the five notes were also secured by deed of trust on the same land, but was made subordinate to the lien securing the principal note.

The Texas Company lost its capital stock and ceased to do business and, as claimed by appellant, had become indebted to the Oklahoma Company in the sum of $13,000.

The Oklahoma Company and the intervener entered into a trust agreement, containing the stipulations which are relied on as furnishing the basis of the intervener's title to the notes and proceeds thereof in controversy, which stipulations are as follows:

"This indenture, made in duplicate this 25th day of February, 1921, between the Conservative Loan & Trust Company, a corporation organized under the laws of the state of Oklahoma, of the first part, and E. C. Stanard, hereinafter called the 'trustee,' of the second part, Witnesseth:

"Whereas, said Conservative Loan & Trust Company is making from time to time loans on farm properties in the state of Oklahoma, and elsewhere, and has received and will receive from its commissions upon said loans mortgages upon the premises upon which the loans are granted second and subject to said loans, which loans do not exceed fifty per cent. of the appraised value of the property upon which said loans are made, and, whereas, said Conservative Loan & Trust Company has resolved, in pursuance of due corporation action, to issue from time to time its bonds or certificates of indebtedness, and to secure the payment of the principal and interest of said bonds by executing this indenture, and by pledging and depositing with the trustee, subject to the conditions herein contained, commission mortgages and obligations in connection herewith, which shall at all times aggregate in their principal or face value 125 per cent. of said bonds or certificates of indebtedness outstanding, and, whereas, said trustee has agreed to accept and undertake the trust as herein created upon the terms and conditions herein contained:

"Now, therefore, it is covenanted and agreed by and between the parties hereto, as follows:

"First: The bonds or certificates of indebtedness of said Conservative Loan & Trust Company to be issued hereunder may be of any denominations and any maturities as shall be deemed most convenient by the said Conservative Loan & Trust Company and by the purchasers thereof. The form of the bonds or certificates of indebtedness to be issued hereunder shall be substantially as follows: (Here follows copy of certificate or bond to be used.)

"II. In consideration of premises and of one dollar ($1.00) to it in hand paid by the trustee, and of other good and valuable considerations, the receipt of which is hereby acknowledged, and in order to secure equally the payment of the principal of all said collateral trust bonds at any time outstanding, the Conservative Loan & Trust Company does hereby assign, transfer and set over, and shall hereafter assign, transfer and set over, to the trustee and its successors in trust, commission mortgages and obligations issued in connection therewith to an aggregate principal amount equivalent to at least 125 per cent. of the total principal amount of said collateral trust bonds which shall be outstanding, but in case of any such commis-

sion mortgages or obligations shall be made without, or shall not bear interest, discount at the rate of 7 per cent. per annum shall be deducted in computing the amount of which they shall be accepted and held as security. But in trust nevertheless for the equal pro rata benefit, security and protection of the purchasers and holders of said collateral trust bonds, without regard to the date of issue, and for the enforcement of the payment thereof, and the interest due thereon when payable in accordance with the true intent and meaning of the terms and conditions of this instrument and of said bonds.

"III. The said mortgages and obligations represent and shall represent the commission of the Conservative Loan & Trust Company for negotiating principal loans for the makers of said mortgages and obligations so deposited, and said mortgages shall describe the same real property described in the mortgages securing the principal loans so negotiated as aforesaid, which property so described shall be subject only to said principal mortgages, which said principal mortgages shall not exceed fifty per cent. of the appraised value of the real property described therein."

It is under this instrument, and especially under the above-quoted stipulations, that appellant claims to be entitled to the proceeds of the notes in controversy. The notes in controversy were sent by the intervener to the First National Bank of Plainview, Tex., for collection and were by that bank collected from Britton, the purchaser of the land.

It is possible that the claim of intervener might be sustained under the showing made, but for another and controlling question which is injected into the case by the appellee. Appellee pleaded expressly that the intervener was not entitled to file his suit of intervention because the Conservative Loan Company of Oklahoma had no permit to transact business in Texas, and hence its assignee could not maintain such suit.

Appellant's claim for recovery is based, as clearly appears from the evidence, upon acts which constitute an evasion of the laws of Texas, which practically forbid foreign corporations doing business in Texas without a permit.

[1, 2] It is true that the garnishor in this case stands in the shoes of the debtor, Hubbell, Slack & Co. v. Union Cotton Co. (Tex. Civ. App.) 196 S. W. 684, and that he is in no better position to assert defenses to the intervener's claim than the debtor himself would be. Neither is there any element of innocent purchase injected into the case by the evidence, as all the parties, the plaintiff, the Oklahoma Company, and the intervener, were all cognizant of the facts and circumstances surrounding the transactions in question, and the only question which we will consider is whether or not the failure of the Oklahoma Company to secure from the proper authority, in Texas, a permit to do business in this state, closes to him the courts of this state.

Article 1529, Vernon's Ann. Tex. Stats., provides:

"*Permit.*—Any corporation for pecuniary profit, except as hereinafter provided, organized or created under the laws of any other state, or of any territory of the United States, or of any municipality of such state or territory, or of any foreign government, sovereignty or municipality, desiring to transact or solicit business in Texas, or to establish a general or special office in this state, shall file with the secretary of state a duly certified copy of its articles of incorporation; and thereupon such official shall issue to such corporation a permit to transact business in this state for a period of ten years from the date of so filing such articles of incorporation. If such corporation is created for more than one purpose, the permit may be limited to one or more purposes."

Article 1536, same statutes, provides further:

"No such corporation can maintain any suit or action, either legal or equitable, in any court of this state upon any demand, whether arising out of contract or tort, unless at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this chapter."

Justice Phillips, in the case of Pierce Oil Corporation v. Weinert, 106 Tex. 435, 437, 167 S. W. 808, 809, says:

"The transaction by a foreign corporation within the state of other than interstate business, is only a privilege, which the state may extend or withhold; it is not a right which the corporation possesses. The state is free, therefore, to prescribe the terms or conditions upon which it grants the authority. They may be rigorous, but the power of the Legislature to give them that character is undoubted; and the foreign corporation in seeking only a license which the state is under no obligation to allow, is in no position to complain of their severity. Its only alternative is to come within the conditions which the state has seen fit to impose. Taber v. Interstate B. & L. Assn., 91 Tex. 92 [40 S. W. 954].

Not only does the statute require of foreign corporations, classed as coming under its provisions, to obtain such permit, but the obtaining the same is a condition precedent to its right to maintain a suit in the courts of this state. Rexall Drug Co. v. Butler (Tex. Civ. App.) 185 S. W. 989; Chapman v. Cash Register Co., 32 Tex. Civ. App. 76, 73 S. W. 969; Stadtler v. Southern Surety Co. (Tex. Civ. App.) 253 S. W. 681, 683; First State Bank v. Janellen Oil Co. (Tex. Civ. App.) 275 S. W. 210, 211, and cases therein cited.

[3] It appears from the evidence that the Oklahoma Company does not come within the exceptions named in the statutes; that the notes and deed of trust executed by Berry and wife to the Texas Company were not transferred to the Oklahoma Company in writing, and that the Texas Company was used only as a cover for the business transacted in Texas by the Oklahoma Company; that the money received by Berry and wife came from the Oklahoma Company. It is therefore apparent that the making of the notes payable to

the Texas Company was a mere subterfuge and was a distinct violation of the statute against the transaction of such business by the Oklahoma Company, which had no permit from the state, and we hold that the suit by intervener cannot be maintained to recover the fund in controversy.

This holding cannot be affected by the fact that the suit by intervention is brought by an assignee. There is not and cannot be, any want of knowledge on the part of intervener, express or implied, which will operate in his favor. In the first place, he was, as stated, a party to and cognizant of the facts; second, he is charged with knowledge of the law requiring such permit. The evidence shows that he is a lawyer; that he is also the attorney of the Oklahoma Company. To hold that he could ignore the law and the facts and, because he is an assignee or trustee, entitled to bring the suit, would render the law inoperative. Any foreign corporation could, under such holding, transact its business in Texas, and, by transferring its evidence of indebtedness to another, evade fulfilling the statutory requirements. New State Land Co. v. Wilson (Tex. Civ. App.) 150 S. W. 253.

[4] The trial court erred in rendering judgment against the intervener. The judgment should have disposed of the case as to him by dismissing his petition for intervention. New State Land Co. v. Wilson, supra; A. Leschen & Sons Rope Co. v. Moser (Tex. Civ. App.) 159 S. W. 1018; National Cash Register Co. v. Ondrusek (Tex. Civ. App.) 271 S. W. 640; S. R. Smythe Co. v. Fort Worth Glass Co., 105 Tex. 8, 142 S. W. 1157.

[5] The matter of the rendition of the judgment against intervener not having been raised in the trial court and not having been brought to our attention in any manner by appellant, the appellee will not be charged with any costs of appeal.

The decisions of the questions above discussed render immaterial all other assignments and propositions, and we therefore overrule them and reverse and reform the judgment of the trial court, and, as reformed, affirm such judgment. Intervener's suit is dismissed, and the plaintiff is granted judgment against the First National Bank of Plainview, Tex., for the amount impounded; the costs to be paid out of such impounded sum.