Jack RUSHING, Appellant,

v.

**INTERNATIONAL AVIATION UNDER-WRITERS, INC., Appellee.**

No. 20185.

Court of Civil Appeals of Texas,
Dallas.

June 24, 1980.

Rehearing Denied July 29, 1980.

John E. Collins, Irving, for appellant.

Patrick F. McGowan, Strasburger & Price, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

AKIN, Justice.

This is an appeal by the defendant, Jack Rushing, from an adverse judgment in a negligence suit for damages to an aircraft leased by appellant from appellee's insured, Hi–Performance Aviation. Appellant, Jack Rushing, leased a Cessna 182 aircraft from Hi–Performance Aviation for a flight to the mountainous area of Taos, New Mexico. Upon arriving at Taos, Rushing landed the airplane improperly, causing it to bounce several times. The landing gear under the nose collapsed, extensively damaging the airplane. Appellee, International Aviation

Underwriters, paid for the repair of the airplane under an insurance policy with Hi–Performance and then sued Rushing to recover its loss. The insurance company's suit was based on a subrogation claim and a written assignment to it of Hi–Performance's rights contained in a proof of loss form. After the insurance company filed suit on its subrogation claim, Hi–Performance lost its right to do business in Texas because its corporate charter was forfeited for failure to pay franchise taxes. The trial judge refused to admit this fact into evidence. Acting on jury findings, the trial judge rendered judgment for the insurance company on the negligence claim for damages to the airplane, but denied its prayer for attorney's fees.

Rushing contends that the insurance company's action was barred by the forfeiture of Hi–Performance's corporate charter for failure to pay franchise taxes. Additionally, Rushing argues that the aircraft lease agreement limits his liability to $500, the amount of the deductible under Hi–Performance's insurance policy. He also complains of the exclusion of testimony as to statements made by one of Hi–Performance's employees and of the refusal of the trial judge to submit issues with respect to the negligence of Hi–Performance Aviation in failing to adequately "check out" appellant before leasing the airplane to him. We overrule these points. By cross–point the insurance company complains of the refusal of the trial court to award it attorney's fees. We sustain the cross–point and modify the judgment to include the attorney's fees found by the jury.

### EFFECT OF FORFEITURE OF IN-SURED'S CORPORATE CHARTER

Our initial question is whether the insurance company's suit is precluded by Tex. Tax.–Gen.Ann. art. 12.14 (Vernon Supp. 1980), which prohibits use of Texas courts by corporations which have had their charters forfeited. Since the insurance company's suit was based on a subrogation claim by virtue of payment to Hi–Performance, and, since Hi–Performance's corporate charter was forfeited for nonpayment of franchise taxes, Rushing contends that art. 12.14 which bars Hi–Performance from access to Texas courts also extends to the insurance company. Thus, Rushing concludes that the trial judge erred in overruling Rushing's plea that the insurance company was barred from instituting this litigation. We cannot agree.

■ The question before us is whether a subrogee is barred from bringing suit where the subrogor was a viable legal entity at the time the subrogation rights were obtained and at the time suit was filed by the subrogee, but where subsequently the subrogor's charter was forfeited for nonpayment of franchise taxes. We hold that because the right of the subrogee insurance company to sue was fixed prior to the forfeiture of Hi–Performance's charter, and because the subrogee is the real party in interest, article 12.14 does not apply to bar suit by the subrogee.

In support of its contention to the contrary, Rushing cites *Federal Crude Oil v. Yount–Lee Oil Co.*, 122 Tex. 21, 52 S.W.2d 56 (1932); *Rodar Leasing Corporation of Colorado v. Wholesome Dairy Inc.*, 442 S.W.2d 467 (Tex.Civ.App.–El Paso 1969, no writ); *Real Estate–Land Title & Trust Co. v. Dildy*, 92 S.W.2d 318 (Tex.Civ.App.–Austin 1936, writ ref'd); and *Stanard v. Cantwell*, 286 S.W. 760 (Tex.Civ.App.–Amarillo 1926, no writ). None of these cases concern the situation where a subrogee or assignee obtains its cause of action from a corporation while the corporation has the right to do business in Texas but later loses that right. Consequently these cases do not support Rushing's contention.

■ Our holding is supported by *Deveny v. Success Co.*, 228 S.W. 295 (Tex.Civ.App.–San Antonio 1921, writ ref'd), in which case the court held that a corporation could proceed with a suit on a sworn account even though its corporate charter had been forfeited for nonpayment of franchise taxes. In that case, the cause of action on the sworn account had accrued and suit had been filed more than six months before the charter was forfeited. The court reasoned

that the right to sue became irrevocably fixed at the time suit was filed and that the suit could be maintained even though the charter was forfeited six months later. In this case, the payment which is the basis of the subrogation action was made, and suit was filed, almost a year before the forfeiture of Hi–Performance's charter. Consequently, the insurance company's right to sue was fixed prior to the forfeiture of Hi–Performance's charter. Indeed, under *Deveny*, even Hi–Performance could have maintained this suit against Rushing under these facts. Thus, clearly Hi–Performance's subrogee could maintain such an action. We need not pass on whether the subrogee could maintain suit in Hi–Performance's name where the subrogor's charter was forfeited before suit was filed or before payment was made to it by the subrogee.

 Our holding does not defeat the purpose of article 12.14, which is to protect the state's revenue by encouraging the payment of franchise taxes. *Isbell v. Gulf Union Oil Co.*, 147 Tex. 6, 209 S.W.2d 762, 765 (1948). Obviously an assignee cannot sue on a claim obtained from the corporation after it loses the right to do business in Texas because such a rule would encourage assignment of claims rather than payment of franchise taxes. Generally where a claim is sold to, or paid by, a third party, the corporation retains no interest in that claim. Thus, application of article 12.14 under those circumstances will not serve to encourage the corporation to pay its franchise taxes but will serve only to punish the assignee or subrogee, contrary to the intent of this statute.

Rushing also argues that the lease agreement limits his liability for damage to the aircraft to the amount of Hi–Performance's deductible, which was $500. Alternatively, he contends that the lease was at least ambiguous as to the limits of his liability for damage to the airplane and thus the trial court erred in excluding his testimony with respect to the meaning of the lease. The pertinent paragraph of the lease provides:

I [Jack Rushing] agree to pay the owner/operator for any deductibles or loss or damage to the aircraft caused in whole or in part by my failure to comply with the above or by my negligence. And *I agree to and do hereby indemnify owner against any liability to other persons, and any costs, damages, loss or attorney fees,* arising in connection with this agreement or with my use of the aircraft. [Emphasis added.]

 Nothing in this paragraph purports to limit Rushing's liability. Rather it makes him liable "for any loss or damage to the aircraft." Consequently, we cannot agree with Rushing's contention that this language limits his liability to the amount of Hi–Performance's deductible. Neither can we accept his alternative contention that this language is ambiguous. In order for an ambiguity to exist, a contract must be susceptible of two *reasonable* yet different constructions. *International Investors Life Insurance Co., Inc. v. Utrecht*, 536 S.W.2d 397 (Tex.Civ.App.–Dallas 1976, no writ); *Coker v. Traveler's Insurance Co.*, 533 S.W.2d 400 (Tex.Civ.App.–Dallas 1976, no writ).

Rushing asserts that the lease is ambiguous because it may be construed as providing no limits on appellant's liability for damage to the aircraft, the construction adopted by the trial court, or it may also be construed as limiting appellant's liability to the $500 deductible set forth in the insurance contract between Hi–Performance and its insurer, the appellee here. We cannot agree that the lease, when read in its entirety, may be reasonably susceptible to the latter construction. The third paragraph of the lease requires Rushing to return the plane in the same condition as he received it, normal wear and tear excepted. The language quoted above makes Rushing liable for any loss caused by his failure to comply with the other lease provisions, or by his negligence. In light of these provisions, we cannot say that the reference to "deductible" gives rise to a reasonable construction that Rushing's liability was limited to the $500 deductible amount under

Hi–Performance's insurance policy. Since the lease was not susceptible to two reasonable yet different constructions, we hold that the lease is not ambiguous. Consequently, the trial judge correctly excluded Rushing's extrinsic testimony concerning the meaning of the lease.

Rushing next argues that the trial judge erred in excluding testimony that an employee of Hi–Performance recommended the Cessna 182 to him. This testimony was excluded as hearsay. Rushing contends that because the insurance company "stood in the shoes" of Hi–Performance, the statement of Hi–Performance's employee was an admission and thus an exception to the hearsay rule. We cannot agree. Statements of an employee are not always admissions against the employer. In order to be characterized as an admission, the statement must have some relation to the agency capacity of the employee. *See* E. Cleary, McCormick on Evidence § 267 at 639 (2d ed. 1972). The record does not show that a recommendation of a Cessna 182 was in any way connected with the employee's duties at Hi–Performance. In absence of such a showing, the trial court did not err in excluding the testimony. *Big Mack Trucking Co., Inc. v. Dickerson*, 497 S.W.2d 283, 297 (Tex.1973).

Rushing argues also that the trial judge erred in failing to submit issues inquiring whether Hi–Performance was negligent in not adequately "checking out" his qualifications to fly the Cessna 182, before leasing the airplane to him. We cannot agree. Negligence cannot exist unless there is a duty owed to the person injured. *St. Louis Southwestern Railway Co. of Texas v. Pope*, 98 Tex. 535, 86 S.W. 5, 7 (1905). We fail to see how Hi–Performance owed Rushing a duty to determine if he could properly fly the airplane before leasing it to him. Nevertheless, Rushing contends that the insurance contract, between Hi–Performance and the insurance company, required Hi–Performance to "check out" all pilots before leasing an airplane to them. However, Rushing acquired no rights under that insurance contract because he was not a party to it nor does he contend that he was a third party beneficiary of the contract. Even assuming that Rushing could properly raise the contractual obligation of Hi–Performance to "check out" pilots, that provision was obviously included in the insurance contract to benefit the insurance company, appellee, and could be waived by them. Hi–Performance owed no duty to Rushing either at common law or under the insurance contract, to "check out" Rushing's ability to fly the Cessna 182 before leasing it to him. Thus, the trial judge correctly refused these requested issues.

Rushing further argues that the trial court erred in declining to admit testimony as to the differences between the Cessna 182 and other airplanes which Rushing had flown. Rushing contends that this testimony is relevant to the adequacy of Hi–Performance's "check out" of appellant's ability to fly the Cessna 182. Since we have held that Hi–Performance had no duty to check out Rushing, this testimony is irrelevant to any issue before the court. Accordingly, this contention is overruled.

## APPELLEE'S CROSS–POINT

By cross–point, appellee contends that the trial court erred in refusing to award attorney's fees incurred in enforcing its subrogation rights. A provision of the lease between Rushing and Hi–Performance gave Hi–Performance the right to recover attorney's fees in a suit arising out of the rental agreement or out of the use of the airplane. Appellee contends that subrogation entitles it to all the rights held by Hi–Performance under the lease, including the contractual right to recover attorney's fees in the case at bar. We agree.

Under the general rule, an insurer bringing suit in a subrogation action receives pro tanto the rights of its insured to the extent of payments made under the insurance contract. *Magnolia Pipe Line Co. v. Security Union Insurance Co.*, 37 S.W.2d 1062 (Tex.Civ.App.–Beaumont 1931, no writ); *Wilson v. Stowers Furniture Co.*, 297 S.W. 352 (Tex.Civ.App.–Galveston 1927,

writ dism'd). Restatement of Restitution § 162 at 656, 661 (1937). The question before us is whether the appellee, suing on a subrogation theory, succeeds to the contractual right of its insured to recover attorney's fees. The insured expended none and thus, none were paid to the insured under the insurance contract. Rather, the attorney's fees were directly incurred by the appellee. We hold that the insurer may recover attorney's fees in a subrogation action where the insured would have been entitled to attorney's fees if it had prosecuted the suit.

Appellee has cited several cases from Texas which are analogous but do not discuss the precise question presented here. In *La–Rey, Inc. v. Kowalski*, 433 S.W.2d 530 (Tex.Civ.App.–San Antonio 1968, no writ), the court held that a surety who pays a promissory note, is subrogated to the right to recover attorney's fees under the provisions of the note. The cases of *Employers Casualty Co. v. Transport Insurance Co.*, 444 S.W.2d 606 (Tex.1969) and *Liberty Mutual Insurance Co. v. General Insurance Corporation*, 517 S.W.2d 791 (Tex.Civ.App.–Tyler 1974, writ ref'd n. r. e.), held that an insurer that had defended a claim was entitled to contribution, from a second insurer that also had a policy in force covering the defendant, for both a portion of the judgment and a portion of the attorney's fees incurred in defending that prior action. In *F. H. Vahlsing, Inc. v. Hartford Fire Insurance Co.*, 108 S.W.2d 947 (Tex.Civ.App.–San Antonio 1937, writ dism'd), the court held that Hartford Insurance was subrogated to the contractual rights of its insured, a railroad, under a real property lease and could recover for damaged railroad cars under a lease provision which made Vahlsing liable for the railroad cars while they were in a building which was the subject of the lease.

The only case we have found which provides an analysis of the question with which we are dealing is *Safway Rental & Sales Co. v. Albina Engine & Machine Works*, 343 F.2d 129 (10th Cir. 1965). *Safway* concerned a suit for personal injuries suffered by a workman when a cable broke on a scaffold that had been leased from Safway and owned by Albina. The injured workman recovered against both. Albina's insurer, Glen Falls Insurance Company, obtained a judgment against Safway for indemnity but the trial court refused to award attorney's fees to the insurer. The trial court held that because the attorney's fees in the suit had been paid by Glen Falls rather than the insured, Glen Falls could not recover attorney's fees under its right of subrogation. The Tenth Circuit Court of Appeals, construing Oklahoma law, reversed and held that the insurer was entitled to recover attorney's fees because the insured could have recovered them had he brought the suit. The court reasoned that where, in the absence of insurance, the defendant would be liable for attorney's fees, the defendant should not be relieved of that liability merely because the insured carried an insurance policy. *Id.* at 134. The court supports its decision with cases holding that in an indemnity action between two defendants, the insurer of the indemnitees may recover attorney's fees from the indemnitor under a subrogation theory. *General Accident Fire & Life Assurance Corp. v. Smith and Oby Co.*, 272 F.2d 581, 77 A.L.R.2d 1134 (6th Cir. 1959). Annot., 77 A.L.R.2d 1143 (1961).

We agree with the rationale of *Safway*. To hold otherwise would only encourage insurers to require that the insured pay his own attorney's fees so that the insurer could reimburse him and obtain subrogation rights. Such a rule would place form over substance. We hold that by payment of the insured's claim, the insurer is subrogated to all of the contract rights of the insured, including the right to recover attorney's fees. The insurer is never allowed, however, to make a profit under this rule. Any money recovered by the insurer in excess of that which the insurer has expended must be remitted to the insured. *Coffman v. Louisville & N. R. Co.*, 184 Ala. 474, 63 So. 527 (1913); 46 C.J.S. *Insurance* § 1215(4), at 191 (1946).

Accordingly, the judgment against Rushing is modified to award International Avi-

ation Underwriters Inc. $7600.00 [1] as attorney's fees. As so modified, the judgment is affirmed.

---

1. · This sum was found by the jury in answer to a special issue.