# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00476-CV

Liza Mossler, Individually; and The Estate of Christopher Glenn Mossler, Appellants

v.

Jeff Nouri, Individually; Mahmoud Nouri, Individually; and J. A. M. Brothers, Inc.,
Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-01-003948, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jeff Nouri, Mahmoud Nouri (the Nouris), and J.A.M. Brothers, Inc. (J.A.M. or the corporation) (collectively, appellees) sued their landlord, Liza Mossler, seeking damages allegedly resulting from their eviction from property they leased to operate a restaurant. Mossler counterclaimed for unpaid rent. After a bench trial, the district court rendered judgment awarding the Nouris, but not the corporation, damages for lost profits and conversion of personal property as well as attorney's fees. The court awarded Mossler damages for unpaid rent but denied her request for attorney's fees. Mossler appealed.[1]

---

[1] Although Mossler filed a notice of appeal both individually and on behalf of the estate of her father, Christopher Glenn Mossler, the district court did not render judgment for or against the estate. To the contrary, it found that the estate was not an entity in existence at the time of trial, did not act as landlord under the lease, and did not cause or suffer any damages. Neither side presents argument or authorities challenging these rulings or otherwise demonstrating that the estate either currently exists or has any justiciable interest in this appeal. Consequently, to the extent Mossler is purporting to appeal on behalf of the estate, we dismiss that appeal for want of subject-

In five issues, Mossler contends that the district court erred by awarding the Nouris damages and attorney's fees and by denying her request for attorney's fees. We will affirm the district court's judgment in part, and reverse and render in part.

## FACTUAL AND PROCEDURAL BACKGROUND

At relevant times, appellees Jeff Nouri and Mahmoud Nouri have owned fifty percent of the stock in appellee J.A.M., a Texas corporation. In 1990, "Jeff Nouri and Ahmad Tehrani dba J.A.M. Brothers Inc." as "tenant" executed a commercial lease agreement with Mossler for real property located at 312 Barton Springs Road in Austin to use as a restaurant. Tehrani signed the lease in his capacity as "tenant's" "President" and Jeff Nouri signed as its "Vice-president." In September 1993, Mossler, Jeff Nouri, Ahmad Tehrani, and Mahmoud Nouri signed an addendum to the lease agreement acknowledging that Mahmoud Nouri had purchased Tehrani's stock in J.A.M. The 1993 addendum further stated that Mahmoud Nouri had agreed to assume "all the interest and all the liabilities of Ahmad Tehrani as tenant on the lease" and that Mossler had agreed to "substitute Mahmoud Nouri on the lease as tenant and to release Ahmad Tehrani from any further obligation . . . as tenant both individually and as a shareholder of J.A.M. Brothers Inc." On May 30, 1995, appellees exercised an option to renew the lease for an additional five years, or until September 15, 2000. The document extending the lease was signed by both Jeff Nouri and Mahmoud Nouri as "Lessee (Tenant)." The parties signed a second five-year extension in April 1999, the terms of which extended the lease through September 15, 2005.

matter jurisdiction. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (standing, a component of subject-matter jurisdiction, requires that the party have a justiciable interest in the outcome).

The lease restricted use of the premises to restaurant purposes. During most of the term of the lease, the premises were used as the location of a restaurant called Al Capone's. When asked about the corporate function of J.A.M., Jeff Nouri testified that the corporation "basically ran Al Capone's restaurant at 312 Barton Springs." At some point, Al Capone's was closed, and J.A.M. entered into a joint venture with another entity to operate a restaurant called Dos Salsas. When Dos Salsas proved unsuccessful, the corporation made repairs to the space and reopened Al Capone's in late February 2000.

On June 15, 2001, an attorney representing Mossler sent certified letters to the Nouris and the corporation asserting that the recipients owed unpaid rent, fees, and penalties dating to 1999 and giving notice "of your default [] in the performance of your obligations and covenants under said lease, resulting in a total arrearage of $31,053.94, for which demand is hereby made." The letter gave further notice "of landlord's intent to terminate the lease if such default continues for a period of ten days from the date of receipt of this letter." The evidence indicates that the Nouris received this notice on June 18, 2001, making the ten-day deadline June 28.

While it was undisputed that appellees were behind on rent, it was also undisputed that the $31,053.94 Mossler demanded was more than double the amount appellees actually owed under the lease. The Nouris testified that they attempted to contact Mossler's attorney before the ten-day deadline, but were unsuccessful. On June 28, Mossler changed the locks at the leased premises. The Nouris contend, and the district court found, that on the day of the lockout Mossler's attorney had agreed to accept $10,300.00 in payment of all rent due and allow access to the leased premises. Jeff Nouri testified that when he tried to tender cashier's checks totaling $10,300.00 the following

3

day, however, the attorney refused the tender and told him Mossler had decided to terminate the lease. Thereafter, the Nouris were denied access to the leased premises.

Both J.A.M. and the Nouris individually filed suit in November 2001, complaining that Mossler had breached the lease by evicting them from the premises. Collectively they sought damages in the form of lost profits they attributed to their inability to operate Al Capone's in the leased premises as well as the value of personal property located there (including restaurant computers and documents) they alleged Mossler had converted following the lockout. Mossler filed a general denial and asserted a counterclaim against appellees seeking to recover rent and late charges under the lease. Both sides also sought attorney's fees.

In February 2003, the Texas Secretary of State ordered J.A.M.'s corporate charter forfeited pursuant to section 171.309 of the tax code. *See* Tex. Tax Code Ann. § 171.309 (West 2008) (secretary of state may forfeit charter of taxable entity if secretary receives comptroller's certification that taxable entity has forfeited its corporate privileges by failing to pay franchise taxes and taxable entity does not revive its privileges within 120 days after date privileges were forfeited). In March 2008, as the trial date approached, Mossler filed a verified motion to strike the corporation's claims on the ground that it had no capacity to sue because its charter was forfeited. *See id.* § 171.252 (West 2008) (corporation that forfeits corporate privileges for failure to pay franchise taxes shall be denied right to sue or defend in courts of this state). Appellees responded by seeking leave to file an amended petition adding allegations that:

> In addition to bringing this suit on their individual behalves, Plaintiffs Jeff Nouri and Mahmoud Nouri sue in equity on behalf of J.A.M. Brothers, Inc. as the beneficial titleholders of their respective interests in the assets of J.A.M. Brothers, Inc.

4

> Plaintiffs Jeff Nouri and Mahmoud Nouri also sue derivatively on behalf of J.A.M. Brothers, Inc. in accordance with Texas Business Corporation Act Art. 5.14(L) . . . .

*See* Tex. Bus. Corp. Act Ann. art. 5.14(L) (West 2003) (shareholder derivative proceedings for closely held corporations). The district court granted appellees leave to file this pleading. Thus, the live pleadings on which appellees proceeded to trial asserted two sets of claims: (1) the Nouris' individual claims, (2) claims of the corporation, with the corporation's claims being asserted by both the corporation in its own behalf and by the Nouris as its representatives "in equity" and "derivatively."

The case was tried to the bench. At trial, the Nouris pursued only their individual and representative claims. As appellees explain in their brief, "Jeff and Mahmoud Nouri sued in dual capacity as representatives of the corporation and on their own behalves while disclaiming any recovery in favor of the corporation." Although purporting to act in the corporation's behalf in pursuing claims predicated on injury to that entity, the Nouris took the position that they could recover damages *individually* through these representative claims, just as they could through their individual claims predicated on their own alleged injuries.

After hearing evidence, the district court rendered judgment awarding damages to the Nouris individually—$25,000 each in lost profits attributable to Mossler's "breach of contract and unlawful lockout" and $5,000 each "for her conversion of his personalty" (a total of $60,000 in actual damages)—plus $16,559.75 each in trial-level attorney's fees (a total of $33,119.95) and another $8,750 each in contingent appellate attorney's fees ($17,500 total). On the other hand, the district court also awarded Mossler $12,690 from the Nouris and the corporation for their breach of the lease, but refused to award Mossler any attorney's fees on her claim. The district court did

5

not award any relief to the corporation and explicitly denied all relief that had been requested and not expressly granted. The district court subsequently entered findings of fact and conclusions of law.

Mossler appealed.

## ANALYSIS

In her first issue, Mossler contends that the district court erred in awarding any damages to the Nouris individually. She contends that all of the claims for which damages were awarded belonged to the corporation; that the corporation, having forfeited its corporate privileges, had no capacity to recover damages in this suit; and that the Nouris, as shareholders of the corporation, lacked standing to recover damages for injury to the corporation itself. In her second issue, Mossler contends that the evidence of lost profits was legally and factually insufficient to support the awards. In her third issue, Mossler complains that the district court erred in holding that she had breached the lease by terminating the lease and denying the tenants access to the premises. In her fifth issue, Mossler challenges the award of attorney's fees to the Nouris. Mossler's fourth issue complains that the district court erred by refusing to award her attorney's fees on her counterclaim for unpaid rent and penalties due under the lease.

### Standing

In her first issue, Mossler contends that the district court erred by awarding any damages to the Nouris because the sole evidence of damages derived from alleged injury to the corporation, not the Nouris, and that the Nouris lacked standing to recover individually for the corporation's injury. We agree with Mossler.

6

A corporate shareholder lacks standing to sue in his own name or for his own benefit on a cause of action belonging to the corporation, even if that shareholder is indirectly injured through injury to the corporation. *See Wingate v. Hajdik*, 795 S.W.2d 717, 718-19 (Tex. 1990); *White v. Independence Bank, N.A.*, 794 S.W.2d 895, 897 (Tex. App.—Houston [1st Dist.] 1990, writ denied). This is true even for sole shareholders. *See Wingate*, 795 S.W.2d at 718-19. In either case, it is the corporation that holds its assets, including any causes of action. *See White*, 794 S.W.2d at 897. Relatedly, any recovery on a corporate cause of action must be available to pay the corporation's debts. *See id.* at 898. Consequently, even while they each own half of the corporation's stock, the Nouris do not own the corporation's causes of action, and therefore lack the justiciable interest in those causes of action necessary to confer standing to pursue them in their individual capacities. *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 251 (Tex. App.—Houston [1st Dist.] 1995, writ denied). And, because the Nouris lacked standing to pursue causes of action belonging to the corporation for their own benefit, the district court lacked subject-matter jurisdiction to render judgment awarding them damages individually on any such causes of action. *See Wingate*, 795 S.W.2d at 719 (shareholder may not sue in his own name or for his own benefit on cause of action belonging to corporation); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (standing is component of subject-matter jurisdiction).

As Mossler observes, the Nouris' evidence of damages at trial was limited solely to losses they attributed to J.A.M.'s injury, not any injury to them individually. The Nouris claimed lost profits from the inability to operate Al Capone's in the leased premises for the duration of the lease term. Jeff Nouri testified that J.A.M.'s function was to operate Al Capone's restaurant;

7

the Nouris were shareholders of the corporation and did not testify that they operated Al Capone's in an individual capacity. Similarly, the Nouris' evidence of conversion damages was limited to the loss of personal property owned by the corporation, not that of the Nouris. When testifying regarding the value of the property he alleged was converted, Jeff Nouri agreed that it was "personal property of the company's that was taken into possession of the landlord at the time of the lockout."

In response, the Nouris urge that they were parties individually to the lease agreement with J.A.M., such that they "had standing to recover damages as tenants under the lease that were damaged by the unlawful lockout." While it may be true in theory that the Nouris would have standing to sue for any injury they personally incurred from a breach of the lease, it remains that they recovered only damages attributable to J.A.M.'s injury. Because any cause of action arising from such injury belonged to J.A.M., not the Nouris, the Nouris lacked standing to pursue and the district court lacked subject-matter jurisdiction to award those damages to the Nouris individually. *See Wingate*, 795 S.W.2d at 719 (shareholder may not sue in his own name or for his own benefit on cause of action belonging to corporation); *see also Texas Air Control Bd.*, 852 S.W.2d at 446.

This leaves the Nouris' representative claims as a potential basis for their recovery. The Nouris argue that equitable principles that apply when corporations become incapacitated enable them to assert the corporation's causes of action on its behalf and recover damages individually. It is undisputed that J.A.M., by failing to pay franchise taxes, forfeited its corporate privileges and therefore lost its right to sue or defend in Texas state courts. *See* Tex. Tax Code Ann. §§ 171.251, .252 (West 2008). Moreover, because J.A.M. failed to revive its corporate privileges within 120 days of forfeiting them, the secretary of state ordered J.A.M.'s corporate charter forfeited. *See id.* § 171.309. However, none of the parties pleaded or testified, nor does the record show,

8

that J.A.M. was dissolved—i.e., ceased to exist as a legal entity—either by its shareholders or involuntarily. *See* Tex. Bus. Corp. Act Ann. arts. 6.01-6.06 (voluntary dissolution); arts. 7.01-7.12 (involuntary dissolution) (West 2003).

It is well established that when a corporation forfeits its privileges, title to its assets, including its causes of action, is bifurcated; legal title remains with the corporation and the beneficial interest is vested in its shareholders. *See El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d at 251 (citing *Regal Constr. Co v. Hansel*, 596 S.W.2d 150, 153 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.)). While the corporation no longer has the legal right (i.e., capacity) to assert its causes of action in court, the shareholders, as holders of beneficial title, have capacity to assert the corporation's causes of action as its representatives and "prosecute or defend such action in the courts as may be necessary to protect [their] property rights," i.e., the value of their shares. *Humble Oil & Ref. Co. v. Blankenburg*, 235 S.W.2d 891, 894 (Tex. 1951); *see El T. Mexican Rests., Inc.*, 921 S.W.2d at 251-52.

The Nouris argue that these principles enabled them not only to assert J.A.M.'s causes of action, but conferred individual standing on them to recover on those claims. They also maintain that they are entitled to recover individually by virtue of article 5.14(L) of the business corporation act. *See* Tex. Bus. Corp. Act Ann. art. 5.14(L). Article 5.14(L) governs derivative suits in closely held corporations, and provides:

> [i]f justice requires: (a) a derivative proceeding brought by a shareholder of a closely held corporation may be treated by a court as a direct action brought by the shareholder for his own benefit; and

> (b) a recovery in a direct or derivative proceeding by a shareholder may be paid either directly to the plaintiff or to the corporation if necessary to protect the interests of creditors or other shareholders of the corporation.

*Id.*[2] The district court relied on both theories in awarding damages to the Nouris individually. It found that J.A.M. "is a corporation that was organized under the laws of the State of Texas" which "[a]t the time of trial . . . had forfeited its corporate charter and was not authorized to conduct business in the State of Texas." In light of the findings, the district court concluded that the Nouris, "as shareholders of J.A.M. Brothers, Inc. are entitled to recover damages suffered by the corporation based on both their derivative claims as properly pled in their [live] petition and as a matter of equity as the beneficial owners of the assets, claims, and causes of action of the corporation upon said corporation's forfeiture of its corporate charter." This was error.

The linchpin in the district court's standing analysis is the view that J.A.M. lacked capacity to prosecute its claims in its own behalf because it had forfeited its charter by the time of trial. However, it is inescapable to us that J.A.M. continued to possess capacity to prosecute its own claims through trial. Section 171.252 of the tax code only bars corporations from *filing suit* after they have forfeited their right to do business; it does not prohibit them from continuing an

---

[2] On January 1, 2010, the Texas Business Corporation Act expired and was replaced by the Texas Business Organizations Code. *See* Tex. Bus. Corp. Act Ann. art. 11.02(B) (West Supp. 2009) ("This Act expires January 1, 2010."). With the exception of filing-fee requirements, the provisions of the business organizations code did not apply until January 1, 2010 to entities formed before January 1, 2006, such as J.A.M., unless the entities elected early adoption. *See* Tex. Bus. Orgs. Code Ann. §§ 402.001-.005 (West Pamph. 2007). There is nothing in the record to indicate that J.A.M. elected early adoption. At the time of trial, therefore, the operable statute was the business corporation act. In any event, the business organizations code made no substantive changes to business corporation act article 5.14(L). *See* Tex. Bus. Orgs. Code Ann. § 21.563 (West Pamph. 2007).

action filed while the corporation was still authorized to do business.  *See Rushing v. Int'l Aviation Underwriters, Inc.*, 604 S.W.2d 239, 241-42 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *Deveny v. Success Co.*, 228 S.W. 295, 296 (Tex. Civ. App.—San Antonio 1921, writ ref'd); *see also Texas Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 405 (5th Cir. 2008).  In *Texas Clinical Labs*, the Fifth Circuit considered whether, under Texas law, a corporation that filed suit while in good standing lost the capacity to proceed with the action after it forfeited its corporate charter.  *See* 535 F.3d at 403-05.  The Fifth Circuit, analyzing Texas law, observed:

> In *Rushing v. International Aviation Underwriters, Inc.*, a Texas appeals court analyzed an earlier version of § 171.252 and allowed an insurance company to maintain its claim as a subrogee of a defunct corporation, reasoning that the claim accrued and the insurance company initiated the action prior to the forfeiture of the corporation's charter.  In so ruling, the court stated:
>
>> [T]he payment which is the basis of the subrogation action was made, and suit was filed, almost a year before the forfeiture of [the corporation's] charter. Consequently, the insurance company's right to sue was fixed prior to the forfeiture of [the corporation's] charter.
>>
>> The attempt . . . to dismiss *Rushing* as inapplicable because it concerns subrogation is unavailing: The *Rushing* court plainly stated that "[i]ndeed, under *Deveny*, even [the corporation that forfeited its charter] could have maintained this suit against [the defendant] under these facts."  In *Deveny v. Success Co.*, the [Texas court] held that, under an earlier version of the Texas Tax Code, the forfeiture of a foreign corporation's permit for failing to pay franchise taxes did not prevent its recovery in an action initiated before forfeiture.

*Id.* at 404 (citations omitted).  The Fifth Circuit concluded that, under *Rushing* and *Deveny*, a corporation that has capacity to file suit at the time it commences an action retains that capacity until the suit's conclusion.  *Id.* at 405 ("[E]ach Texas corporation has the right to prosecute to

11

conclusion the proceedings begun while it was still authorized under Texas law."). We agree with the Fifth Circuit's analysis of Texas law.[3]

The record reflects that appellees filed their original petition on November 29, 2001. When challenging J.A.M.'s capacity below, Mossler relied on the fact that the corporation's charter had been forfeited in February 2003. *See Pledger v. Schoelkopf*, 762 S.W.2d 145, 146 (Tex. 1988) (challenge to lack of capacity is waived if not raised by verified pleading filed in trial court pursuant to rule 93 of the rules of civil procedure). Because J.A.M. filed this suit against Mossler before this event, it retained capacity to prosecute its claims against her.

Given that J.A.M. retained capacity to prosecute its claims, the Nouris' reliance on the derivative-suit statute is misplaced. A shareholder derivative action is an action in which a shareholder steps into the shoes of the corporation and usurps the board of directors' authority to decide whether to pursue the corporation's claims. *See In re Crown Castle Int'l Corp.*, 247 S.W.3d 349, 355 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Typically, the shareholder brings the action to compel the assertion of a corporate right when the corporation's managers

_____

[3] Neither Mossler nor the Nouris cite cases that reach a different conclusion. The cases they cite all address the different question of whether a corporation that has already forfeited its corporate privileges may file suit in Texas courts. *See Humble Oil & Ref. Co. v. Blankenburg*, 235 S.W.2d 891 (Tex. 1951) (permitting shareholders, as beneficial owners, to prosecute action on behalf of corporation that forfeited its right to do business before suit filed); *Carpaint, Inc. v. Pelican Partners, L.P.*, No. 13-07-00751-CV, 2008 Tex. App. LEXIS 6869 (Tex. App.—Corpus Christi-Edinburg Aug. 28, 2008, pet. denied) (mem. op.) (corporation that forfeited charter prior to institution of suit lacked capacity to sue); *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (corporation that filed suit after forfeiture of corporate privileges lacked capacity to sue); *Rodar Leasing Corp. v. Wholesome Dairy, Inc.*, 442 S.W.2d 467 (Tex. Civ. App.—El Paso 1969, no writ) (corporation that forfeited corporate privileges prior to institution of suit lacks capacity to pursue any claims, including those that arose prior to forfeiture).

refuse to act. *See National Bankers Life Ins. Co. v. Adler*, 324 S.W.2d 35, 36 (Tex. Civ. App.—San Antonio 1959, no writ). In a less typical situation, the shareholder may be permitted to enforce the corporation's rights when the corporation itself would not be permitted to do so. For example, a shareholder may be permitted to prosecute proceedings to protect the shareholder's beneficial interest in corporate assets when a corporation is barred from bringing suit because its right to do business in the state has been forfeited. *See Regal Constr. Co.*, 596 S.W.2d at 153. Neither situation applies here. J.A.M. was itself a plaintiff in this cause and could have prosecuted its claims. Regardless of the Nouris' attempt to characterize their claim as a "shareholder derivative action," it is not one.

The Nouris' reliance on equitable principles is similarly misplaced. Because J.A.M. retained capacity to prosecute its causes of action, beneficial title to those causes never vested in the Nouris. *See El T. Mexican Rests., Inc.*, 921 S.W.2d at 251. And, even if it did, the Nouris are mistaken that beneficial title confers individual standing on them to recover under the corporation's causes of action. Unless and until the corporation is dissolved, which did not happen here, legal title to its causes of action remains in the corporation. *See id.* Consequently, even while the corporation may lack *capacity* to prosecute its causes of action, it alone retains *standing* to do so. *See id.* While the shareholders' beneficial title confers *capacity* on them to prosecute the corporation's claims on the corporation's behalf, "[t]his entitlement to go into court *for the corporation* does not amount to the right to *recover individually* on the corporate cause of action." *Id.* (emphases in original). Instead, legal title to such a recovery remains with the corporation, subject to the corporation's obligations to creditors. *See id*. at 253 & nn. 8-10.

The Nouris lacked standing to recover on any cause of action for damages to the corporation, and we dismiss their claims seeking to recover individually on those claims for lack of subject-matter jurisdiction. With respect to the Nouris' individual claims, the record contains no evidence of any injury to or damages suffered by the Nouris individually resulting from Mossler's conduct. Consequently, we sustain Mossler's first issue and reverse the portions of the judgment awarding the Nouris damages and render judgment that the Nouris take nothing on those claims. Likewise, because the Nouris concede that their attorney's fees awards are predicated on their recovery of "some damages," we must similarly reverse that portion of the judgment and render judgment that the Nouris take nothing on their attorney's fee claims. We therefore sustain Mossler's fifth issue challenging the award of attorney's fees to the Nouris. And, because we conclude the Nouris are not entitled to any recovery, we need not reach Mossler's second and third issues complaining of the district court's findings regarding breach of the lease and lost-profits damages.[4]

**Mossler's attorney's fees claim**

In her fourth issue, Mossler asserts that the district court erred by refusing to award her attorney's fees even though she recovered as damages from J.A.M. and the Nouris $12,690.00 in unpaid rent and penalties. Mossler contends that she is entitled to recover attorney's fees pursuant to section 38.001 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008) (permitting the recovery of reasonable attorney's fees for claim based on

---

[4] Although J.A.M. was a plaintiff below, the district court rendered judgment denying the corporation any relief on its claims. Appellees have not appealed that portion of the judgment. To the contrary, appellees emphasize that they "disclaim[ed] any recovery in favor of the corporation" at trial.

oral or written contract). However, when a claimant makes an "excessive" demand and would not accept a lesser amount, the claimant is not entitled to attorney's fees expended in litigation thereafter. *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 209 (Tex. App.—Austin 2005, pet. denied) (citing *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981)); *see also Hernandez v. Lautensack*, 201 S.W.3d 771, 777 (Tex. App.—Fort Worth 2006, pet. denied). An "excessive" demand refers to one made unreasonably or in bad faith. *Hernandez*, 201 S.W.3d at 777; *Pratt v. Trinity Projects, Inc.*, 26 S.W.3d 767, 769 (Tex. App.—Beaumont 2000, pet. denied). While a demand is not excessive simply because it is greater than the amount the fact-finder later determines is actually due, a demand for an amount greater than what is due may be evidence of an excessive demand. *See Findlay*, 611 S.W.2d at 58; *Pratt*, 26 S.W.3d at 769. Similarly, a creditor who refuses a tender of the amount actually due may be found to have acted unreasonably or in bad faith. *See Findlay*, 611 S.W.2d at 58.

In the present case, as noted, Mossler, through her attorney, demanded over twice the amount the district court found was owed, and over twice the amount she conceded at trial was owed. Further, Mossler's attorney, as her representative, told the Nouris that payment of $10,300.00 would satisfy their payment obligations such that they could continue to use the leased premises. When the Nouris attempted to tender that amount, Mossler's attorney, again acting on Mossler's behalf, refused the tender. We conclude that this evidence supports a finding that the demand was unreasonable or in bad faith so as to be "excessive." *See Pennington v. Gurkoff*, 899 S.W.2d 767, 772 (Tex. App.—Fort Worth 1995, writ denied) (demand can be found excessive if it seeks an unreasonable amount from the debtor); *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 418 (Tex. App.—Corpus Christi 2001, pet. denied) (creditor's demand for monies to which he is not

15

entitled is unreasonable and, consequently, excessive). Consequently, the district court did not err in refusing to award Mossler attorney's fees. We overrule Mossler's fourth issue.

## CONCLUSION

We conclude that the Nouris had no standing to prosecute or recover individually on claims belonging to J.A.M. We dismiss these claims for lack of subject-matter jurisdiction. We also conclude that there is no evidence in the record of damages incurred by the Nouris individually. We reverse the portion of the district court's judgment awarding damages to the Nouris and render judgment that they take nothing. We also reverse the portion of the district court's judgment awarding the Nouris attorney's fees. The portion of the district court's judgment denying recovery to J.A.M. was not challenged on appeal, and we express no opinion as to that portion of the judgment. The remainder of the judgment is affirmed.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed:  May 27, 2010

16