COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-06-009-CV

 

NATHAN A. WATSON COMPANY                                          APPELLANT

   AND APPELLEE

 

                                                   V.

 

EMPLOYERS
MUTUAL CASUALTY                                   APPELLEES

COMPANY AND HIGHLANDS                                        AND APPELLANTS

INSURANCE COMPANY                                                                        

                                              ------------

 

           FROM
THE 153RD  DISTRICT COURT
OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.  Introduction








In one issue, Appellant
Nathan A. Watson Company (AWatson@) asserts
that the trial court erred by not enforcing a contractual provision which
requires the nonprevailing parties, Appellees Employers Mutual Casualty Company
(AEMC@) and
Highlands Insurance Company (AHighlands@), to
reimburse the prevailing party, Watson, its reasonable and necessary attorney=s fees and all other reasonable costs, expenses, and charges
associated with the defense of the suit. 
We agree and reverse and remand in part on Watson=s issue.  As Cross-appellants,
EMC and Highlands assert that the trial court erred by granting Watson=s motion to extend the postjudgment deadlines.  We disagree and affirm in part as to EMC=s and Highlands=s
counter-point.    

II.  Factual and Procedural Background

This is the subdivision
subrogation case.  In August 1995, Watson
and Sovereign Homes Corporation (ASovereign@) entered
into an agreement for the sale and purchase of lots (ALots Purchase Agreement@).  Neither EMC, nor Highlands
was a party to the Lot Purchase Agreement. 
According to Watson, the contract provided that it would develop real
property, known as Hunter Pointe, located in Arlington, Tarrant County,
Texas.  The contract further provided that
Sovereign would have the right to purchase a number of lots in each phase as
the phases were completed and build homes on these lots.








Watson was responsible for
the development of the raw land under the contract, but did not play a role in
the design of the homes, their foundations, or the construction of those
homes.  Sometime later, a number of homes
in the development began experiencing foundation problems, and Sovereign, using
insurance monies from its insurers, Highlands and EMC, either repurchased those
homes from the homeowners or made repairs. 
Hence, Highlands and EMC held subrogation rights regarding these monies.[1]

Litigation subsequently
ensued between various parties, Watson being one of several defendants and EMC
being among several plaintiffs. 
According to individual plaintiff Diana K. Strauss= (AStrauss@) ninth amended petition, she was the assignee for the claims of
Sovereign, Sovereign having assigned its claims and interests Ain this lawsuit@ to
Strauss.  Also, according to plaintiff
EMC=s ninth amended petition, 

EMC
had issued policies of insurance to Sovereign. 
These policies provided coverage, inter alia, for Sovereign=s
damages that are the subject of this lawsuit . . . .  By this Petition, EMC is making a direct
claim against the Defendant for, among other things, EMC=s
damages, attorney=s
fees, costs, and interest.  EMC is
subrogated to the rights of Sovereign in the amount of its policy compensation
to and/or on behalf of Sovereign, as well as to the rights of Sovereign and/or
its assignees, pursuant to the policies and/or other written agreements, at
common law and/or in equity.

 

Highlands intervened in the suit as Athe subrogee for Sovereign Homes Corporation@ according to its Intervenor=s fourth amended petition.








In sum, Sovereign, through Strauss,
Highlands, and EMC, filed suit against Watson and others.  According to Watson, Sovereign=s Auninsured@ claims were settled, but EMC=s and Highlands= subrogation
claims proceeded to trial.  The pertinent
part of paragraph 20.H. of Sovereign=s agreement with Watson, which agreement was sued upon by EMC and
Highlands through their subrogation rights, read, 

Should
either party employ an attorney or attorneys to enforce any of the provisions
hereof, or to recover damages for the breach of this Agreement, the
non-prevailing party in any final judgment agrees to pay the other party all
reasonable costs, charges and expenses, including attorney=s
fees, expended or incurred in connection therewith.

 

At trial, the amount,
reasonableness, and necessity of Watson=s attorney=s fees were
stipulated to by EMC and Highlands.  At
the conclusion of trial, the court submitted questions of fact to the jury, and
the jury responded on September 1, 2005, by finding for Watson on all
counts.  No damages were awarded to any
party.

On November 18, 2005, the
trial court signed the final judgment in the underlying action.  In the judgment, the trial court formalized
the verdict of the jury and denied Watson=s request for its attorney=s fees and costs to be paid by the nonprevailing parties, EMC and
Highlands.  The court did order that all
costs of court were taxed against EMC and Highlands. 








On January 6, 2006, Watson
filed a verified motion to extend the postjudgment deadlines in the trial court
seeking additional time to file its notice of appeal.  In this motion, Watson claimed that the first
notice its attorney received of the trial court=s judgment was a copy of the signed judgment and a letter from the
court.  Both were dated November 18,
2005, but were filed stamped and mailed by the clerk of the court December 9,
2005.  Moreover, Watson claimed its
attorney did not actually receive the judgment and letter until December 12,
2005.  After a hearing, the trial court
entered an order extending the deadline for Watson to file notices of appeal or
other postjudgment motions until January 11, 2006.[2]

Watson filed its notice of
appeal on January 9, 2006 involving the question of what, if anything, the
nonprevailing parties, EMC and Highlands, owed Watson under paragraph 20.H. of
the Lot Purchase Agreement.  After objecting
to the verification of Watson=s motion to extend the dismissal deadlines, EMC and Highlands then
filed their notice of cross-appeal on February 28, 2006, claiming the trial
court erred by extending the postjudgment deadlines.

III. Verified Motion to
Extend Postjudgment Deadlines








Because EMC=s and Highlands= cross-point
bears on our jurisdiction to decide Watson=s issue, we shall address their cross-point first.  EMC and Highlands assert that the trial court
erred by granting Watson=s verified
motion to extend the postjudgment deadlines because the record does not reflect
any direct and admissible evidence that Watson failed to receive notice of the
judgment before December 12, 2005.  We
disagree.  

A. Standards of Review 

Postjudgment procedural
timetables run from the day a party receives notice or actual knowledge of the
judgment, rather than the day the judgment is signed, if the party (1) complies
with the sworn motion, notice, and hearing requirements mandated by Rule
306a(5), and (2) proves it received notice of the judgment more than twenty but
less than ninety‑one days after it was signed.  See Tex.
R. Civ. P. 306a.  Specifically,
Rule 306a(5) requires that the party alleging late notice of judgment file a
sworn motion with the trial court establishing the date the party or its
counsel first learned of the judgment.  Tex. R. Civ. P. 306a(5); see also
Mem=l Hosp. of
Galveston County. v. Gillis, 741 S.W.2d 364, 365
(Tex. 1987).   








The sworn motion establishes
a prima facie case that the party lacked timely notice and invokes a trial
court=s otherwise‑expired jurisdiction for the limited purpose of
holding an evidentiary hearing to determine the date on which the party or its
counsel first received notice or acquired knowledge of the judgment.  See Cont'l Cas. Co. v. Davilla, 139
S.W.3d 374, 379 (Tex. App.CFort Worth 2004, pet. denied); Grondona v. Sutton, 991 S.W.2d
90, 91B92 (Tex. App.CAustin 1998,
pet. denied).  We review the trial court=s findings of the date a party received notice of judgment by the well‑known
standards of legal and factual sufficiency of the evidence.  Dishner v. Huitt-Zollars, Inc., 162
S.W.3d 370, 378 (Tex. App.CDallas 2005, no pet.).  As the
fact-finder, the trial judge weighs the evidence and judges a witness=s credibility, and the judge may accept or reject any witness=s testimony in whole or in part. 
Id.      








A legal sufficiency challenge may only be sustained
when  (1) the record discloses a complete
absence of evidence of a vital fact, (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362B63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
fact-finder could, and disregard evidence contrary to the finding unless a
reasonable fact-finder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

B. Application 








Here, Watson=s attorney offered proof, in his affidavit attached to Watson=s verified motion, that he first received notice of the judgment on
December 12, 2005.  An affidavit is
simply a Astatement in
writing of a fact or facts signed by the party making it, sworn to before an
officer authorized to administer oaths, and officially certified to by the
officer under his seal of office.@  Tex. Gov=t Code Ann. ' 312.011(1) (Vernon 2005). 
Watson=s attorney
swore that he did not acquire actual knowledge of the judgment nor receive any
oral or written notice of judgment before December 12.  EMC and Highlands contend that paragraph
three of the affidavit, as it relates to Watson=s lack of notice and knowledge, is hearsay and, as such, constitutes
incompetent evidence that should not have been considered and relied on by the
trial court.  We disagree.  

Paragraph three of the
affidavit says, ANeither
defendant nor I received timely notice of the judgment and had no actual notice
of the judgment or notice from the clerk until December 12, 2005.@  The affidavit also indicates
that the information conveyed by Watson=s attorney was Atrue and
correct based upon [his] personal knowledge.@  The only other evidence
presented to the trial court was an e-mail sent by Watson=s attorney to the other attorneys in the case asking when they had
received notice.  Watson=s attorney indicated in the e-mail that he had not received notice
until December 12.  The attorney for
Furgo South (AFurgo@), as codefendant, responded that she had received notice on November
21, 2005.  EMC and Highlands claim this
is the only direct and competent evidence verifying any notice date to any
party.    








The attorney‑client
relationship is an agency relationship. 
The attorney=s acts and
omissions within the scope of his or her employment are regarded as the client=s acts.  Gavenda v. Strata
Energy, Inc., 705 S.W.2d 690, 693 (Tex. 1986).  Thus, the general rule pronounced by the
Texas Supreme Court over one hundred and fifty years ago remains good law:  A[T]he general maxim [is] that whatever a man sui juris may do
of himself, he may do by another.@  Parker v. Poole, 12
Tex. 86, 87 (1854) (holding that attorney could confess judgment for client
before justice of the peace).  

Watson was required to prove Athe date that such party [Watson] or [its] attorney [first
either] received such notice [of the judgment] or acquired actual knowledge of
the signing.@  Tex.
R. Civ. P. 306a(5) (emphasis supplied). 
Watson=s attorney,
acting as Watson=s agent and
thus on behalf of Watson, submitted an affidavit in support of the verified
motion to extend the postjudgment deadlines. 
Furthermore, due to the very agency nature of the attorney-client
relationship, we impute Watson=s attorney=s lack of
knowledge of the judgment to Watson itself, unless Watson separately received
notice, and there is no eveidence in the record that it did.  

Thus, based upon the above
evidence and standards of review, we hold that there is legally and factually
sufficient evidence that Watson met the burdens of rule 306a(4), (5) and that
neither Watson nor its counsel received notice or actual knowledge of the
judgment before December 12, 2005. 
Accordingly, the trial court properly 
granted Watson=s verified
motion to extend the postjudgment deadlines. 


We overrule EMC=s and Highlands=s sole
counter-point.    

 

 








IV.  Attorney=s Fees

In a single issue, Watson
asserts error by the trial court in denying Watson=s request for attorney=s fees and costs based on the Lot Purchase Agreement.  EMC and Highlands respond that the trial
court correctly denied the request because (a) neither EMC nor Highlands was a
party to the Agreement, (b) EMC and Highlands were subrogated to the rights of
Sovereign but not its liabilities, (c) Watson did not recover damages, which is
a prerequisite for attorney=s fees, and (d) Watson presented no evidence of expert fees as
costs.  Watson=s single issue appears to be a matter of first impression.

A.  Standard of Review

The determination of whether
attorney=s fees are available in a particular case is a question of law, which
is reviewed by this court under the de novo standard.  See Holland v. Wal-Mart Stores, 1
S.W.3d 91, 94 (Tex. 1999).  If a right to
attorney=s fees exists as a matter of law, then the review of attorney=s fees is under an abuse of discretion standard, as is the allocation
of costs.  See Shaikh v.
Aerovias De Mexico, 127 S.W.3d 76, 82 (Tex. App.CHouston [1st Dist.] 2003, no pet.); Z.A.O., Inc. v. Yarbrough Drive
Ctr. Joint Venture, 50 S.W.3d 531, 550 (Tex. App.CEl Paso 2001, no pet.).

 

 








B. Parties to the Contract

EMC and Highlands first argue
that the trial court was correct in its ruling denying Watson=s attorney=s fees
because they were not parties to the contract and therefore cannot be bound to
the liabilities of the contract, citing Neal v. SMC Corp., 99 S.W.3d
813, 815 (Tex. App.CDallas 2003,
no pet.), which in turn cites Boy Scouts of Am. v. Responsive Terminal Sys.,
Inc., 790 S.W.2d 738, 747 (Tex. App.CDallas 1990, writ denied). 
While these cases are correctly cited, they do not involve the issue of
subrogation rights and thus are not instructive on the issue before this
court.  Therefore, we reject this
argument.  Instead we address the
subrogation argument below.  

C.  Damages

EMC and Highlands next argue
that Watson is not entitled to recover attorney=s fees because it was not awarded damages, citing Holland, 1
S.W.3d at 95 and Miller v. Kennedy & Minshew, Professional Corp.,
142 S.W.3d 325, 350 (Tex. App.CFort Worth 2003, pet. denied). 
Again, these cases are not instructive because they do not involve
subrogation rights nor do they concern contracts wherein the prevailing party,
which as a defendant may not recover damages, was contractually entitled to
attorney=s fees.  Thus, we also reject
this argument as irrelevant.

 








D.  Subrogation as to Rights, Not Liabilities

EMC and Highlands next argue
that in this subrogation case, they are entitled to the rights held by
Sovereign, but not subject to any liabilities, even when suing under the terms
of a contract.  EMC and Highlands, as
subrogees, acknowledge that they step into the shoes of Sovereign Homes.  See Interstate Fire Ins. Co. v. First
Tape, Inc., 817 S.W.2d 142, 146 (Tex. App.CHouston [1st Dist.] 1991, writ denied).  They further cite cases indicating that an
insurer is subrogated to its rights of the insureds, including contractual
rights.  None of these cases, however,
involve contracts that have potential liabilities in the event the suit is not
successful.  No such Texas cases have
been cited by either party to this court. 


It is the position of EMC and
Highlands that even though they sued Watson under the terms of a contract
wherein Watson would recover its attorney=s fees should it prevail, even though EMC and Highlands sued in the
name of their subrogor, and even though they acknowledge that they stand in the
shoes of Sovereign, Watson is not entitled to its attorney=s fees because subrogation extends only to rights and not to
liabilities.  We disagree.  This court has held the following:








Subrogation
is the principle under which an insurer that has paid a loss under an insurance
policy is entitled to all the rights and remedies belonging to the insured
against a third party with respect to any loss covered by the policy.  Black=s Law Dictionary 1467 (8th ed. 2004).  Application of the doctrine is said to be Athe
purest of equities,@ and
Texas courts are particularly hospitable to it. 
Interfirst Bank Dallas, N.A. v. U.S. Fid[.] & Guar.
Co., 774 S.W.2d 391, 397 (Tex. App.CDallas 1989, writ
denied).  Equitable subrogation is not
dependent upon contract, but arises by operation of law or by implication in
equity to prevent injustice.  Id.

 

Harris v. Am. Protection Ins. Co., 158 S.W.3d 614, 622 (Tex. App.CFort Worth 2005, no pet.).  Here,
however a contract is involved and is determitive of the rights and potential
liabilities of the parties.  As a matter
of public policy, we hold that when an insurer sues in subrogation under a
contract, it is entitled to all of the rights of its subrogee and likewise
exposed to all of its liabilities.

We now quote at length from a
California case, citing by analogy a Texas case.  The case involved a property insurer of
apartment lessees, Allstate, which, after the insureds were paid their claims
for loss of personal property in an apartment fire, brought a subrogation
action against the lessor, Loo.








An insurer/subrogee paying for a loss has the
right to pursue its insured's rights and remedies against the third party
causing the loss.  (Continental Cas.
Co. v. Phoenix Constr. Co. (1956) 46 Cal.2d 423, 429, 296 P.2d 801; Fireman's
Fund Ins. Co. v. Maryland Casualty Co. (1994) 21 Cal.App.4th 1586, 1595‑1596,
26 Cal.Rptr.2d 762.)  In the action for
subrogation the insurer as subrogee stands in the shoes of the
insured/subrogor.  (Suburban Motors,
Inc. v. State Farm Mut. Auto. Ins. Co. (1990) 218 Cal.App.3d 1354, 1357,
268 Cal.Rptr. 16.)  When standing in the
insured's shoes as the analogy indicates, the insurer has no greater rights
than the insured would have, and for that reason is subject to the same
defenses assertable against the insured/subrogor. (E.g., Liberty Mut. Ins.
Co. v. Fales (1973) 8 Cal.3d 712, 717, 106 Cal.Rptr. 21, 505 P.2d 213; Fireman's
Fund Ins. Co. v. Maryland Casualty Co., supra, 21 Cal.App.4th at p.
1596, 26 Cal.Rptr.2d 762; Bright v. American Termite Control Co. (1990)
220 Cal.App.3d 1464, 1469, 269 Cal.Rptr. 793.)

An excellent example of this principle in action
in the context of contractual attorney fees is Rushing v. Intern. Aviation
Underwriters (Tex. Civ. App. 1980) 604 S.W.2d 239.  There defendant leased an aircraft from Hi‑Performance
Aviation which he damaged upon landing. 
The insurer of the aircraft, International Aviation Underwriters, paid
for the cost of repairs under its policy with Hi‑Performance Aviation,
then brought an action in subrogation against the defendant‑lessee to
recover its loss.  The trial court
entered judgment for the insurer/subrogee on its negligence claim, but refused
to award attorney fees.  (At pp. 240‑241.)

The basis of the insurer/subrogee's claim for
attorney fees was a provision in the lease agreement between Hi‑Performance
and the defendant‑lessee which gave the prevailing party the right to
recover reasonable attorney fees in a suit arising out of the rental agreement
or out of the use of the aircraft.  (Rushing
v. Intern. Aviation Underwriters, supra, 604 S.W.2d at p. 243.)  The insurer argued that subrogation entitled
it to all the rights held by the insured under the lease, including the
contractual right as prevailing party to recover its attorney fees, and the
Texas Court of Appeal agreed: AUnder the general rule, an
insurer bringing suit in a subrogation action receives pro tanto the rights of
its insured to the extent of payments made under the insurance contract.  [Citations.] 
The question before us is whether [the insurance company], suing on a
subrogation theory, succeeds to the contractual right of its insured to recover
attorney's fees.  The insured expended
none and thus, none were paid to the insured under the insurance contract.  Rather, the attorney's fees were directly
incurred by the [insurance company].  We
hold that the insurer may recover attorney's fees in a subrogation action where
the insured would have been entitled to attorney's fees if it had prosecuted
the suit.@  (At pp. 243B244.)








Thus, under Rushing, had Allstate
prevailed against Loo, it would have succeeded to the rights of the
insured/subrogor to recover a reasonable attorney fee.  We have been offered no reason in law or
logic why the converse should not also be true. 
Loo's obligation to defend against the action was the same irrespective
of the identity of the plaintiff: the lessee or the lessee's subrogee.  We therefore hold that Loo, as prevailing
party, is entitled to assert his contractual right to recover reasonable
attorney fees in the subrogation action.

Allstate argues that the rule we announce today
is bad social policy: ATo
allow counterclaims against the subrogated insurer means that the insurer's
risk depends on factors that are unrelated to the risks for which it earned
premiums.@  As we have explained in Part A, ante,
recovery of attorney fees is not accomplished by counterclaim: it is an item of
costs which has been agreed to by contract. 
(Code Civ. Proc., '
1033.5, subd. (a)(1).)  Nor does our
ruling increase any risk to insurers. In this case the risk the insurer
undertook to insure against was the risk of fire damage to personal property of
its insureds.  The insurer lost that risk
and paid its policyholders. Nothing in our decision increases or decreases that
risk. After making payment the insurer had a decision to make: whether to sue
the owner of the building in which the fire occurred. The insurer decided to do
that but lost. We assume that the decision to so litigate was intelligently
made after weighing the risks that all those who instigate litigation face.
That list includes the risk of not prevailing which includes the risk of
bearing all of the cost of the litigation‑especially in a case in which
there is a contract providing for the payment of the prevailing party's
attorney fees.

Finally, Allstate also urges our holding will
discourage insurance companies from pursuing their subrogation rights.  We doubt it. 
But what we do not doubt is this: the presence of an attorney fees
provision in a contract discourages‑and is intended to discourage‑the
filing of lawsuits between the parties premised on weak legal positions.  If the risk of being liable to pay attorney
fees to the opposing side discourages a subrogee from pursuing a weak
subrogation claim, then a valid social policy has been advanced by our holding
today.

 

Allstate
Ins. Co. v. Loo, 46 Cal. App. 4th 1794, 1799B1801
(Cal. Ct. App. 1996).

 








We hold that Watson is
entitled to the $583,000 in attorney=s fees stipulated to by the parties. 
Accordingly, we sustain Watson=s sole issue in part.

V.  Expert Costs

Watson also asserts that it
is entitled to its expert costs because those expenses are also encompassed in
the language of paragraph 20.H. of the Lot Purchase Agreement which calls for payment
by the nonprevailing party of Aall reasonable costs, charges and expenses, including attorney=s fees.@  We do not reach the question of whether
expert costs are encompassed by this language because there is no evidence of
any such costs in the record, other than a request in Watson=s motion for judgment of the amount of these costs, let alone proof of
their necessity and reasonableness. 
Watson=s request in
this regard was thus properly denied by the trial court.  We overrule this portion of Watson=s issue.  

VI.  Conclusion








We overrule EMC=s and Highlands=s sole
counter-point.  Watson=s single issue is sustained in part and overruled in part.  We reverse that portion of the trial court=s judgment denying Watson=s request for attorney=s fees and remand to the trial court for the apportionment of the
$583,000 in attorney=s fees as
between EMC and Highlands.  The remainder
of the trial court=s judgment
is affirmed.  

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 

DELIVERED:
February 1, 2007











[1]Subrogation is the right of one who
has paid an obligation which another should have paid to be indemnified by the
other.  Employers Cas. Co. v. Dyess,
957 S.W.2d 884, 886 (Tex. App.CAmarillo 1997, pet. denied).  





[2]Thirty days after receipt of actual
notice of the trial court=s judgment.  See Tex.
R. Civ. P. 306a(4).