IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-10760

TEXAS CLINICAL LABS INC, also known as Texas Clinical Labs LLC;
TEXAS CLINICAL LABS-GULF DIVISION INC, also known as Texas
Clinical Labs-Gulf Division LLC; ESTATE OF DANIEL P CAMPBELL

Plaintiffs-Appellants

v.

MIKE LEAVITT, SECRETARY, DEPARTMENT OF HEALTH & HUMAN
SERVICES and UNKNOWN EMPLOYEES AND AGENTS OF THE
DEPARTMENT OF HEALTH & HUMAN SERVICES

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs-Appellants Texas Clinical Laboratories, Inc., Texas Clinical
Laboratories-Gulf Division, Inc., Texas Clinical Labs, LLC, Texas Clinical Labs-
Gulf Division, LLC, and the Estate of Daniel P. Campbell (collectively, the
"Appellants") initiated this action against the Department of Health and Human
Services (the "DHHS"). In their original and amended complaints, the
Appellants (1) sought review of an administrative decision denying them
additional interest on the principal of a Medicare reimbursement judgment

rendered by an administrative law judge ("ALJ") in favor of Texas Clinical Laboratories, Inc. and Texas Clinical Laboratories-Gulf Division, Inc., and (2) asserted that the DHHS, through repeated misrepresentations throughout the Medicare reimbursement proceedings, deprived them of specified entitlements due under the Social Security Act, 42 U.S.C. §§ 301-1397jj. The district court dismissed the Appellants' action with prejudice, ruling that none of the Appellants was a proper plaintiff because each lacked either standing or capacity to proceed. Convinced that the district court erred as a matter of law when it ruled that Texas Clinical Laboratories, Inc. and Texas Clinical Laboratories-Gulf Division, Inc. lacked capacity under Texas law, we reverse and remand to the district court to conduct further proceedings for the purpose of determining whether the Appellants are entitled to the additional interest they seek, and, if so, how much. Also, we affirm the district court's dismissal of the Appellants' due-process claim, but we do so on different grounds.

## I. FACTS AND PROCEEDINGS

### A. The Appellants

The Appellants comprise (1) two defunct Texas corporations (Texas Clinical Laboratories, Inc. ("Texas TCL") and Texas Clinical Laboratories-Gulf Division, Inc. ("Texas TCL-Gulf") (collectively, the "Texas TCLs")); (2) two Colorado limited liability companies with names similar to those of the Texas TCLs (Texas Clinical Labs, LLC and Texas Clinical Labs-Gulf Division, LLC (collectively, the "Colorado TCLs")); and (3) the Estate of Daniel P. Campbell (the "Estate").

Before they ceased doing business, the Texas TCLs provided clinical laboratory services to long-term care facilities under the Medicare program, deriving approximately 80 to 90 percent of their income from Medicare reimbursements. The Colorado TCLs were formed in 2003, purportedly to receive, on behalf of the Texas TCLs, payment of the Medicare reimbursement

judgment underlying this interest dispute. Daniel P. Campbell was the sole shareholder of the Texas TCLs, and his estate is the sole member of each of the Colorado TCLs.

## B.    Origin of the Dispute

The Texas TCLs' dispute with the DHHS began around 1986, when Blue Cross/Blue Shield of Texas (the "Carrier"), a private insurance carrier administering the Medicare program in the State of Texas on behalf of the DHHS, implemented a new formula for calculating travel allowances. The new formula was grounded in the Carrier's assumption that healthcare technicians travel at an average speed of thirty-five miles per hour ("35 m.p.h.") when driving to and from the facilities they service. In May 1988, the Texas TCLs objected to this new methodology and urged that a lower, more accurate m.p.h. component be used. This would result in a higher overall reimbursement for all healthcare providers in Texas, including the Texas TCLs. In an unrelated move in July 1988, shortly after the Carrier rejected this request, the Texas Secretary of State ordered that Texas TCL-Gulf be involuntarily dissolved for failure to maintain a registered agent in the State of Texas.

## C.    First Action

In March 1989, after their initial request for adjustment was rejected, the Texas TCLs filed suit against the Carrier and the DHHS in the federal district court in Colorado. The Texas TCLs alleged, inter alia, that the defendants' manner and method of determining the Medicare reimbursement travel allowance fee, especially the m.p.h. component, violated the Administrative Procedure Act, 5 U.S.C. § 551 et seq. The action was transferred from Colorado to the Northern District of Texas, where, in March 1990, the district court dismissed it without prejudice because the Texas TCLs had failed to exhaust their administrative remedies.

## D.    Administrative Proceedings

In July 1990, the Texas TCLs requested that the Carrier review its initial determination ("Carrier Review"). Following a hearing, the hearing officer denied additional reimbursement. The Texas TCLs then requested a hearing before the Office of Hearings and Appeals ("OHA") at which to dispute the Carrier Review decision. In the meantime, on September 17, 1990, Texas TCL-Gulf was reincorporated;[1] and, on November 18, 1991, Texas TCL forfeited its right to do business in the State of Texas by failing to pay franchise taxes.

During the OHA hearing in December 1991, the Texas TCLs presented evidence and data to support their contention that a lower m.p.h. figure should be used. Neither the DHHS nor the Carrier made an appearance at the hearing or submitted evidence. In January 1992, the ALJ ruled in favor of the Texas TCLs, finding that there was no evidence to support the use of the 35 m.p.h. component in the travel allowance formula. The OHA Appeals Council (the "Appeals Council") reversed the ALJ's decision, however, and remanded the action so that the Carrier and the DHHS could present evidence.

In February 1993, the same ALJ issued another ruling in favor of the Texas TCLs, again finding that the Carrier and the DHHS had failed to produce evidence to support their travel allowance formula. The Appeals Council, though, was persuaded by the Carrier's and the DHHS's conclusional representation that evidence existed to support the 35 m.p.h. figure and once again reversed. This time, the Appeals Council remanded the matter to a different ALJ.

In June 1995, the successor ALJ rendered the third decision in favor of the Texas TCLs; however, the Appeals Council reversed yet again, concluding that

---

[1] To distinguish the two Texas TCL-Gulf entities, we hereafter refer to the original corporation as Texas TCL-Gulf I and to its successor as Texas TCL-Gulf II. There is some uncertainty as to whether the "Texas TCL-Gulf" that is a party to this action is Texas TCL-Gulf I or II, but, as we explain below, this uncertainty does not affect the outcome of this appeal.

the Carrier and the DHHS presented sufficient evidence to support their use of the 35 m.p.h. component.

Meanwhile, in February 1996, Texas TCL-Gulf forfeited its charter by failing to pay franchise taxes.[2]

E.    Second Action

That same month, the Texas TCLs re-instituted their suit against the DHHS in the Northern District of Texas, again objecting to its methodology for calculating travel allowances.  The district court granted summary judgment to the DHHS and dismissed the Texas TCLs' action.  On appeal, though, we concluded that the record did not include any objective evidence to support the DHHS's use of the 35 m.p.h. figure.  We nevertheless remanded the matter to the administrative level based on representations made to us by the DHHS that objective evidence did exist to support its formula.

F.    Administrative Proceedings Re-opened

The administrative proceedings were re-opened in March 2002.  In September 2002, Campbell, the sole shareholder of the Texas TCLs, died.  That same month, the DHHS introduced into evidence an e-mail in which for the first time it admitted that the 35 m.p.h. figure was based solely on the Carrier staff's personal belief regarding travel time in Texas, rather than being based on any objective evidence.  The following March, the ALJ ruled in favor of the Texas TCLs for the fourth time, awarding them $581,157.00 plus accrued interest.  This time, the DHHS did not appeal.

Approximately one month before the DHHS issued checks to satisfy the judgment, the Colorado TCLs were formed, purportedly to receive payment from the DHHS because the Texas TCLs had gone out of business.  In December 2003,

---

[2] We observe that, although the Texas TCLs were dissolved or forfeited their charters during the course of the administrative proceedings, their capacity to sue was never challenged until this action.

the DHHS issued two checks: The first, in the amount of $297,644.51, was made payable to "Texas Clinical Laboratories & Estate of D Campbell"; the second, in the amount of $324,617.24, was made payable to "Texas Clinical Laboratories and Est of D P Campbell." These checks included interest of $41,104.75, which the DHHS had calculated only from the March 2003 date of the fourth decision of the ALJ.

G.     Administrative Proceedings Concerning Interest

The Texas TCLs objected to the DHHS's calculation of interest, and in May 2004, requested that the ALJ rule supplementally that interest began to accrue as of January 31, 1992, the date of the first of the four ALJ decisions rendered in their favor. The ALJ held that he did not have the authority to rule on the issue, so the Texas TCLs appealed. The Appeals Council ruled that (1) the ALJ did have the authority to rule on the matter, and (2) no additional interest was owed to the Texas TCLs.

H.     This Action

The Appellants filed this action in the United States District Court for the District of Colorado in October 2005 to (1) determine the proper amount of accrued interest owed to them, and (2) assert a due-process claim against the DHHS for misrepresenting, throughout the Medicare reimbursement proceedings, that there was evidence supporting the m.p.h. component of its travel allowance formula when in fact there was none. The caption of the Appellants' complaint identifies the "plaintiffs" as "Texas Clinical Labs, Inc., n/k/a Texas Clinical Labs, LLC; Texas Clinical Labs-Gulf Division, Inc., n/k/a Texas Clinical Labs-Gulf Division, LLC; and the Estate of Daniel P. Campbell."

The DHHS moved (1) to dismiss the complaint, arguing that the Colorado TCLs and the Estate did not have standing; and (2) for change of venue. Thereafter, the Appellants were granted permission to amend their complaint to identify separately the plaintiffs as the Texas TCLs, the Colorado TCLs, and

the Estate. The DHHS then moved to dismiss the amended complaint, reiterating its argument that the Colorado TCLs and the Estate did not have standing, and insisting that the Texas TCLs were barred from pursuing the action by the sixty-day limitations period specified in 42 U.S.C. § 405(g). The DHHS also renewed its motion for a change of venue. Without ruling on the DHHS's motion to dismiss, the district court in Colorado transferred the case to the district court in the Northern District of Texas.

Following this transfer, the DHHS again moved to dismiss the amended complaint and raised additional arguments that (1) the Colorado TCLs were not proper parties because the Texas TCLs' claims had not been properly assigned to them, (2) the Estate was not a proper party and no personal representative had been appointed for the Estate, and (3) the Texas TCLs could not maintain the action because the Appellants' claim for additional interest did not arise within three years following their dissolutions. In response, the Appellants moved to correct the caption of their amended complaint to name the personal representative of the Estate as a plaintiff. They also filed their opposition to the DHHS's most recent motion to dismiss.

In May 2007, the district court issued its memorandum and order, holding that (1) the Texas TCLs lacked capacity to seek judicial review of the calculation of interest because they had forfeited their corporate charters for failing to pay franchise taxes, and (2) the Colorado TCLs and the Estate lacked standing to pursue the claim for additional interest. Concluding that the Appellants lacked the requisite standing and capacity to pursue their claim for additional interest, the district court dismissed their due-process claim as well. The Appellants timely filed a notice of appeal.

## II. ANALYSIS

A. Standard of Review

We review de novo the district court's legal conclusions,[3] including its determination that the Texas TCLs lacked capacity under Texas law.[4]

B.      The Texas TCLs' Capacity

The Appellants insist that any one or more among the Texas TCLs, the Colorado TCLs, the Estate, or the Estate's personal representative may maintain this action to recover additional interest under the Medicare reimbursement judgment rendered in favor of the Texas TCLs. As we hold that the Texas TCLs have capacity and that the district court erred in concluding otherwise, we do not address that court's rulings with respect to the standing of the Colorado TCLs or the Estate.

The capacity of a corporation to bring suit is determined by the law of the state where it is organized.[5] In this case, therefore, we look to Texas law to determine whether the Texas TCLs have capacity to maintain this suit. In concluding that the Texas TCLs lacked capacity, the district court cited §§ 171.251 and 171.252 of the Texas Tax Code, which specify that a corporation forfeits its right to sue if it fails to pay its franchise taxes.[6] Texas TCL failed to pay its franchise taxes no later than November 18, 1991, and Texas TCL-Gulf failed to pay its franchise taxes no later than February 13, 1996. The district

---

[3] Texas v. United States, 497 F.3d 491, 495 (5th Cir. 2007).

[4] Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991) ("We conclude that a court of appeals should review de novo a district court's determination of state law.").

[5] FED. R .CIV. P. 17(b)(2).

[6] Section 171.251 of the Texas Tax Code states that "[t]he comptroller shall forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation . . . does not pay, within 45 days after the date notice of forfeiture is mailed, a tax imposed by this chapter or does not pay, within those 45 days, a penalty imposed by this chapter relating to that tax . . . ." TEX. TAX CODE ANN. § 171.251(2). Section 171.252 of the Texas Tax Code states that "[i]f the corporate privileges of a corporation are forfeited under this subchapter . . . the corporation shall be denied the right to sue or defend in a court of this state . . . ." TEX. TAX CODE ANN. § 171.252(1).

court reasoned therefore that neither Texas corporation had capacity under Texas law to proceed with this action for additional interest. The district court's reasoning is flawed, however, because § 171.252 bars corporations from filing suit only after they have forfeited their right to do business.[7] The Texas TCLs commenced their action to obtain Medicare reimbursement while they were authorized to do business under Texas law.

In Rushing v. International Aviation Underwriters, Inc., a Texas appeals court analyzed an earlier version of  § 171.252 and allowed an insurance company to maintain its claim as a subrogee of a defunct corporation, reasoning that the claim accrued and the insurance company initiated the action prior to the forfeiture of the corporation's charter.[8] In so ruling, the court stated:

> [T]he payment which is the basis of the subrogation action was made, and suit was filed, almost a year before the forfeiture of [the corporation's] charter. Consequently, the insurance company's right to sue was fixed prior to the forfeiture of [the corporation's] charter.[9]

The attempt of the DHHS to dismiss Rushing as inapplicable because it concerns subrogation is unavailing: The Rushing court plainly stated that "[i]ndeed, under Deveny, even [the corporation that forfeited its charter] could have maintained this suit against [the defendant] under these facts."[10] In Deveny v. Success Co., the Texas Supreme Court held that, under an earlier version of the Texas Tax

---

[7] See Rushing v. Int'l Aviation Underwriters, Inc., 604 S.W.2d 239, 241-42 (Tex. Civ. App.—Dallas 1980); Deveny v. Success Co., 228 S.W. 295, 296 (Tex. Civ. App.—San Antonio 1921, writ ref'd).

[8] Rushing, 604 S.W.2d at 241-43.

[9] Id. at 242.

[10] Id.

Code, the forfeiture of a foreign corporation's permit for failing to pay franchise taxes did not prevent its recovery in an action initiated before forfeiture.[11]

The Texas TCLs initiated their Medicare reimbursement action on July 12, 1990, when they requested Carrier Review.[12] Texas TCL did not forfeit its right to do business in the State of Texas for failing to pay franchise taxes until November 1991. Accordingly, Texas TCL had capacity at the time the Medicare reimbursement action was commenced, and, under Rushing and Deveny, it retained capacity and will continue to do so until the suit's conclusion. The district court's ruling to the contrary was erroneous.

The district court also erred when it ruled that Texas TCL-Gulf lacked capacity to pursue the claim for additional interest. Texas TCL-Gulf I was involuntarily dissolved in July 1988, for failing to maintain a registered agent in Texas. It was reincorporated (as Texas TCL-Gulf II) in September 1990 and did not forfeit its charter until September 1996, after failing to pay franchise taxes. As mentioned supra in note 1, there is some uncertainty as to whether the "Texas TCL-Gulf" that is a party to this suit is Texas TCL-Gulf I or II: The district court apparently treated the party as Texas TCL-Gulf II and ruled that the corporation lacked capacity to sue because it had forfeited its charter in 1996. Again, though, the district court's ruling is erroneous. It fails to appreciate that the Texas TCLs' Medicare reimbursement action was commenced prior to Texas TCL-Gulf II's forfeiture of its charter.

Moreover, even if we treat the original corporation as the party to this suit—which we believe is proper because the Texas TCLs requested Carrier Review before Texas TCL-Gulf II was incorporated—Texas TCL-Gulf I has

---

[11] 228 S.W. at 296.

[12] See Reveille Tool & Supply, Inc. v. Texas, 756 S.W.2d 102, 103 (Tex. App.—Austin 1988) (holding that administrative proceedings qualify as an "action or other proceeding" for purposes of article 7.12 of the Texas Business Corporation Act).

capacity to pursue its claim for additional interest. Texas TCL-Gulf I was involuntarily dissolved in July 1988, as opposed to forfeiting its charter for failing to pay franchise taxes.[13] Therefore, under article 7.12 of the Texas Business Corporation Act, Texas TCL-Gulf I had three years in which to bring an action on an existing claim.[14] The Texas TCLs' Medicare reimbursement claim arose in May 1988, before Texas TCL-Gulf I was involuntarily dissolved; and the Texas TCLs initiated the reimbursement action within three years of Texas TCL-Gulf I's dissolution when Carrier Review was requested in July 1990.

Irrespective of whether the "Texas TCL-Gulf" that is a party to this suit is Texas TCL-Gulf I or II, it has capacity to proceed. Contrary to the district court's holding, each Texas corporation has the right to prosecute to conclusion the proceedings begun while it was still authorized under Texas law.

i.    The DHHS's Argument That Interest Claim is Separate

Our holding that the Texas TCLs have capacity to pursue their claim for additional interest is based on the fact that the Medicare reimbursement action

---

[13] Emphasis added. Before 1993, forfeited corporations were not considered to be dissolved corporations. Therefore, a corporation that forfeited its charter because it failed to pay franchise taxes was not entitled to the benefit of the three-year survival statute, discussed infra note 14. In 1993, however, the Texas Legislature amended the definition of "dissolved corporation" to include "a corporation . . . whose charter was forfeited pursuant to the Tax Code." TEX. BUS. CORP. ACT ANN. art. 7.12F(1).

[14] See TEX. BUS. CORP. ACT ANN. art. 7.12A(1)-(2), C (Vernon 1987) ("A corporation dissolved (1) by the issuance of a certificate of dissolution or other action by the Secretary of State, (2) by a decree of a court when the court has not liquidated all the assets and business of the corporation as provided in this Act, or (3) by expiration of its period of duration, shall continue its corporate existence for a period of three (3) years from the date of dissolution, for the following purposes: (1) prosecuting or defending in its corporate name any action or proceeding by or against the corporation; (2) permitting the survival of any remedy not otherwise barred by limitations available to or against the corporation, its officers, directors, members, or creditors, for any right or claim existing, or any liability incurred, before the dissolution . . . . C. If after the expiration of the three-year period there still remains unresolved any action or proceeding not otherwise barred by limitations begun by or against the corporation before its dissolution or within three (3) years after the date of its dissolution, the corporation shall continue to survive only for the purpose of that action or proceeding, until any judgment, order, or decree in the action or proceeding is fully executed.").

was initiated in July 1990, when Carrier Review was requested. The DHHS nevertheless insists that the Texas TCLs' claim for additional interest is separate and distinct from their Medicare reimbursement claim. The DHHS further asserts that the Texas TCLs' interest claim did not accrue until December 2003—when the DHHS issued payment for the Medicare reimbursement judgment—well after the Texas TCLs had ceased to exist and any applicable survival period had expired.

The DHHS's proposition widely misses the mark. It is pellucid that entitlement to interest is part and parcel of the underlying debt or liability,[15] especially under the Texas Business Corporation Act's broad definition of the term "claim" as including "a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured."[16] Furthermore, at the time that the instant proceedings were commenced, 42 C.F.R. § 405.378 was in effect, which regulation expressly authorizes a Medicare provider to collect interest on an underpayment.[17] We hold that the Texas TCLs' claim for additional interest was established on the date their Medicare reimbursement claim arose.

    ii.    The DHHS's Argument That Interest Claim is Time-Barred

---

[15] See, e.g., Bruning v. United States, 376 U.S. 358, 360 (1964) (stating that interest is generally considered "an integral part of a continuing debt"); Yang v. City of Chicago, 137 F.3d 522, 524-25 (7th Cir. 1998) (holding that civil rights plaintiff's garnishment action to enforce and collect judgment was not a lawsuit separate from § 1983 action, but rather ancillary proceeding of the same suit); Grunenthal v. Long Island R.R. Co., 418 F.2d 1234, 1236 (2d Cir. 1969) (holding that applicable interest rate determined "not [by the] date when interest began to accrue but the date when the cause of action arose").

[16] TEX. BUS. CORP. ACT ANN. Art. 7.12F(2).

[17] See, e.g., 42 C.F.R. § 405.378(a) ("(a) Basis and purpose. This section, which implements sections 1815(d) and 1833(j) of the common law and Act, and authority granted under the Federal Claims Collection Act, provides for the charging and payment of interest on overpayments and underpayments to Medicare providers, suppliers, HMOs, competitive medical plans (CMPs), and health care prepayment plans (HCPPs).").

In addition to challenging the Texas TCLs' capacity to sue, the DHHS contends that this suit is barred because the Appellants' complaint was not expressly amended to name the Texas TCLs as plaintiffs until after the lapse of the sixty-day deadline for seeking judicial review of an agency decision.[18] Because the district court held that the Texas TCLs lacked capacity, it did not reach this issue.

Following the Appeals Council's decision denying additional interest, the Appellants had until October 31, 2005 to seek judicial review. They filed their complaint in the district court in Colorado on October 26, 2005; however, the complaint's caption identifies the plaintiffs as "Texas Clinical Labs, Inc., n/k/a Texas Clinical Labs, LLC; Texas Clinical Labs-Gulf Division, Inc., n/k/a Texas Clinical Labs-Gulf Division, LLC; and the Estate of Daniel P. Campbell." The Appellants did not amend their complaint to name the Texas TLCs as plaintiffs until March 17, 2006, well after the sixty-day review deadline had passed. Nevertheless, we hold that, given, inter alia, (1) the procedural history of this matter, (2) the caption of the original complaint, and (3) the allegations in the original complaint, the Appellants' amended complaint plainly relates back to the filing of their original complaint under Federal Rule of Civil Procedure 15(c).[19] The DHHS's contention that the district court was without subject

---

[18] 42 U.S.C. § 405(g) states in pertinent part that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." The final agency decision here at issue provided that the Appellants had sixty days to file their complaint in the district court plus five days for mailing.

[19] See FED. R. CIV. P. 15(c)(1)(C) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought

matter jurisdiction when the Appellants initiated this suit, and that there is therefore nothing to which the amended complaint can relate back, is a non-starter. The Appellants' amended complaint, identifying the Texas TCLs as proper plaintiffs, obviously relates back to their original complaint. The Texas TCLs are thus not barred by the sixty-day limitation period within which to seek judicial review of a final agency decision.

## C. Claim for Additional Interest

Even though this matter has needlessly spanned close to twenty years because of the DHHS's repeated misrepresentations that there was evidence supporting its methodology for calculating travel allowances, we cannot resolve it at this preliminary juncture because the parties have not yet presented their case on the merits to the district court. Therefore, we remand to the district court to consider whether the additional interest sought is owed. If, in the end, the district court is persuaded to find in favor of the Appellants and to award them interest from the date of the initial ALJ decision of January 31, 1992, the government should carefully consider the situation before filing an appeal and thereby needlessly perpetuating this dispute that has already been prolonged by the government's unwarranted actions, keeping in mind Rule 38 of the Federal Rules of Appellate Procedure.[20]

## D. Due-Process Claim

---

against it, but for a mistake concerning the proper party's identity.); Slaughter v. Southern Talc Co., 949 F.2d 167, 173-75 (5th Cir. 1991) (applying Rule 15(c) to situation where complaint amended to add plaintiff and stating that "the linchpin is notice, and notice within the limitations period" (citation omitted)); Williams v. United States, 405 F.2d 234, 235-39 (5th Cir. 1968) (holding that 1967 amended complaint adding mother of injured child as party plaintiff related back to filing of original complaint in 1963).

[20] Rule 38 of the Federal Rules of Appellate Procedure provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." FED. R. APP. P. 38.

Based on the record before us, however, we are able to address the Appellants' due-process claim. The Appellants contend that the DHHS deprived them of their right to due process when it flagrantly misrepresented to them and to the reviewing courts that objective evidence existed to support the 35 m.p.h. component of its travel-allowance formula. The district court held that, because the Appellants lacked standing and capacity to pursue their administrative claim for additional interest, they also lacked standing and capacity to purse their constitutional claim. Even though this reasoning is flawed, we nevertheless affirm the district court's dismissal of the Appellants' due-process claim because the record demonstrates that the claim is barred by the applicable statute of limitations.

In actions brought under Bivens,[21] we apply the forum state's statute of limitations.[22] The applicable Texas statute of limitations is two years.[23] The Appellants have shown that they first became aware of the DHHS's misrepresentations in September 2002, when the DHHS introduced into evidence the aforesaid e-mail in which it admitted that no objective evidence existed to support its use of the 35 m.p.h. figure. Accordingly, the Appellants' due-process claim accrued in 2002. They did not assert their claim, however, until October 2005, well after the applicable two-year statute of limitations had expired.

## III. CONCLUSION

We reverse the district court's ruling that the Texas TCLs lacked capacity to maintain this action to recover additional interest under their Medicare reimbursement judgment, and we remand to the district court for further

---

[21] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[22] See Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993).

[23] See id.; see also TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).

proceedings consistent herewith. Also, we affirm the district court's dismissal of the Appellants' due-process claim.

REVERSED and REMANDED IN PART; AFFIRMED IN PART.