# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 26, 2012

No. 11-51041

Lyle W. Cayce
Clerk

JSLG, INCORPORATED,

Plaintiff-Appellant

v.

CITY OF WACO; RANDY CHILDERS, Building Official

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:11-CV-131

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

The Plaintiff-Appellant JSLG, Inc. ("JSLG") brought suit against the Defendants-Appellees, the City of Waco ("the City") and Randy Childers,[1] Building Official for the City, raising constitutional challenges to an ordinance governing sexually oriented businesses. The district court granted summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] For ease of reference, the Defendants-Appellees will be referred to simply as "the City."

No. 11-51041

judgment for the City and denied JSLG's request for a preliminary injunction. Finding no reversible error, we affirm the district court's judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

JSLG was a Texas corporation, and it owned a nightclub called Sonny's BYOB ("Sonny's") that featured nude dancing in Waco, Texas.  The City's ordinance allowed nude dancing only if a corporation held a sexually oriented business ("SOB") license.  JSLG obtained this license in 2007, and the ordinance requires the license to be renewed annually.  John Skruck ran the nightclub; however, the paperwork filed with the City lists his daughter Mary Skruck, who resides outside of Texas, as the owner.

In 2010, the Waco police received complaints stating that prostitution was occurring at Sonny's.  The Waco police thereafter conducted several undercover investigations at the nightclub.  As a result, three of the dancers were arrested for prostitution.  After each arrest, the City sent a nuisance notification letter to JSLG.  Two of the dancers were convicted of the offense of prostitution.  John Skruck provided bail and legal fees for at least one of the dancers.

Additionally, the City Fire Marshall ("Marshall") conducted an inspection of the nightclub.  During this inspection, the Marshall discovered a room with a door that locked from the inside.  It was known as the "High Roller Room." The Marshall asked that the door be unlocked.  The manager on duty that night claimed he could not find the right key, making a fair amount of noise attempting to open the door with various keys.  After some delay, a dancer and a male patron exited this room.  The Marshall told the manager that the door should not have a lock and that a camera should be installed in the room. During a routine follow up inspection, the Marshall again found the High Roller Room door locked.  After gaining entry to the room, the Marshall observed a nude dancer and a male patron, who was not wearing pants and whose genitals were exposed.

2

No. 11-51041

In December 2010, JSLG submitted its annual application for renewal of its SOB license. On April 18, 2011, the City sent notice to JSLG that the license was revoked upon receipt of the notice. The City cited four sections of the Code of Ordinances as grounds for the one-year revocation.[2] JSLG appealed to the city council. After hearing from both sides, the council voted to uphold the revocation.

Thereafter, JSLG filed suit in Texas state court and obtained a temporary restraining order ("TRO"). The City removed the case to federal district court, and JSLG moved again for a TRO and a preliminary injunction. The district court denied the TRO and held a hearing on the motion for the preliminary injunction. Thereafter, the City filed a motion for summary judgment. On September 26, 2011, the district court denied JSLG's motion for preliminary injunction and granted the City's motion for summary judgment. JSLG now appeals.[3]

> II.    ANALYSIS
>
> A.    Standard of Review

---

[2] The violations were of the following sections:

> (1) A licensee gave false or misleading information in the material submitted during the application or license renewal process; . . . (3) A licensee or an employee has knowingly allowed prostitution on the premises; . . . (6) On two or more occasions within a 12-month period, a person or persons committed an offense, occurring in or on the licensed premises, of a crime listed in section 20-36(a)(8)a, for which a conviction has been obtained; and the person or persons were employees of the sexually oriented business at the time the offenses were committed; (7) A licensee or an employee has knowingly allowed any act of sexual intercourse, sodomy, oral copulation, masturbation or sexual contact to occur in or on the licensed premises[.]

§ 20-40(b)(1), (3), (6), (7) of Waco's Code of Ordinances ("Sexually Oriented Businesses").

[3] Subsequent to the filing of the instant appeal, the Secretary of State forfeited JSLG's corporate privileges based on JSLG's failure to pay taxes.

No. 11-51041

JSLG argues that the district court erred in granting the City's motion for summary judgment. This Court reviews a district court's ruling on summary judgment de novo, applying the same standards as the district court. *See, e.g., Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B.     Mootness

#### 1.     Injunctive Relief

The City contends that the appeal is moot and should be dismissed for lack of appellate jurisdiction. The City points out that JSLG brought suit to enjoin the revocation of its SOB license. However, the City has since revoked the license, and the one-year revocation period has expired. On April 18, 2011, the City sent a letter notifying JSLG that its SOB license would be revoked for one year from the date of receipt of the letter. Additionally, the letter provided that upon appeal the revocation shall be automatically stayed pending the city council's final decision. JSLG took an appeal, which stayed the revocation. The City denied JSLG's appeal. On May 12, in state court, JSLG obtained a TRO against the City. On May 23, the City removed the case to federal district court. On May 26, JSLG moved for a continuing TRO and preliminary injunction. On May 27, the court held a hearing on the request for a TRO and denied it that day. On June 3, the district court held a hearing on the motion for a preliminary injunction. On September 26, the court denied JSLG's motion for preliminary injunction. Thus, the revocation began at the latest on May 27, 2011, and was set to last for a period of one year. This Court heard oral argument on September 5, 2012. Clearly, the one-year revocation period has expired. A "request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined." *Harris v. City of Houston*, 151 F.3d 186, 189 (5th

4

No. 11-51041

Cir. 1998). "An appeal from a denial of a motion for preliminary injunction is rendered moot when the act sought to be enjoined has occurred." *Seafarers Intern. Union of N. Am. v. Nat'l Marine Servs.*, 820 F.2d 148, 151 (5th Cir. 1987), *abrogated on other grounds by Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 198 (1991). This Court has explained that "once the action that the plaintiff sought to have enjoined has occurred, the case is mooted because no order of this court could affect the parties' rights with respect to the injunction we are called upon to review." *Id.* (internal quotation marks and citation omitted). Accordingly, because the one-year revocation period has expired, the request to enjoin is moot.

Nonetheless, JSLG states that the revocation leaves an unfavorable mark if it were to apply for an SOB license in the future. We note that, based on JSLG's failure to pay taxes, the Secretary of State forfeited JSLG's corporate privileges. JSLG is now a defunct corporation and cannot file a renewal application for an SOB license unless it pays the taxes it owes. Meanwhile, another corporation has since filed an application for an SOB license and now operates the business at the same location. At the time of oral argument, JSLG had not paid its back taxes to revive its corporate privileges so that it could file another application for an SOB license. Moreover, since the argument the Court has received no indication that JSLG has taken any steps to revive its privileges. Accordingly, JSLG has failed to prove "continuing collateral consequences" stemming from the expired revocation period that would constitute a "concrete and continuing injury" under Article III. *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (internal quotation marks omitted). Indeed, it is "purely a matter of speculation" whether JSLG will apply for an SOB license in the future. *Id.* at 16. Thus, because there is no injunctive relief we can grant JSLG, any claim for injunctive relief is moot. We therefore DISMISS as MOOT JSLG's claim for injunctive relief.

No. 11-51041

### 2. Declaratory Relief

#### a. § 20-40(b)(3), (6), and (7)

JSLG mounts a facial challenge against the City's SOB ordinance, seeking to have it declared unconstitutional. JSLG contends that the district court erred in holding that the ordinance passes constitutional muster under *O'Brien*[4] because three of the ordinance's provisions allow revocation of a license based solely on the knowledge of an employee without requiring knowledge on the part of the licensee.[5] The three provisions state that the building official shall revoke an SOB license if it is determined that:

> (3) A licensee or an employee has knowingly allowed prostitution on the premises; . . . (6) On two or more occasions within a 12-month period, a person or persons committed an offense, occurring in or on the licensed premises, of a crime listed in section 20-36(a)(8)a, for which a conviction has been obtained; and the person or persons were employees of the sexually oriented business at the time the offenses were committed; or (7) A licensee or an employee has knowingly allowed any act of sexual intercourse, sodomy, oral copulation, masturbation or sexual contact to occur in or on the licensed premises[.]

§ 20-40(b)(3), (6), (7).

However, prior to reaching the merits of the constitutional challenge, we must first address the City's contention that JSLG's claim for declaratory relief has become moot. As previously noted, the Secretary of State forfeited JSLG's corporate privileges based on JSLG's failure to pay taxes, rendering JSLG a defunct corporation, which cannot apply for an SOB license. Applying Supreme Court precedent, we conclude that the claim for declaratory relief is also moot.

---

[4] *United States v. O'Brien*, 391 U.S. 367 (1968).

[5] *Cf. Chulchian v. City of Indianapolis,* 633 F.2d 27, 32 (7th Cir. 1980) (rejecting a constitutional challenge because the ordinance, as construed by the City and the Court, "requires that a licensee knowingly permit illegal conduct," and therefore. "the ordinance does not penalize a licensee for an isolated incident over which he has no control").

No. 11-51041

In *City of Erie v. Pap's A.M.*, the city council for the City of Erie ("Erie") enacted an ordinance making it a summary offense to appear nude in public. 529 U.S. 277, 283 (2000). Pap's, a Pennsylvania corporation, operated a business that featured nude dancing. *Id.* at 284. Pap's filed suit, requesting declaratory relief and an injunction against the enforcement of the ordinance. *Id.* Subsequently, the Pennsylvania Supreme Court held that the ordinance unconstitutionally burdened the expressive conduct of nude dancing. *Id.* at 286. The Supreme Court granted Erie's petition for certiorari, and Pap's moved to dismiss the case as moot because it was no longer operating a nude dancing business. *Id.* at 287. Pap's argued that the case was moot because the Court's ruling would have no effect upon Pap's as it was no longer operating a nude dancing establishment. *Id.* The Supreme Court explained that merely closing the business was "not sufficient to render this case moot" because "Pap's is still incorporated under Pennsylvania law, and it could again decide to operate a nude dancing establishment." *Id.* Additionally, the Court opined that the case was not an ordinary "voluntary cessation case" because it was the prevailing party that voluntarily ceased its conduct and then sought to have the case dismissed as moot. *Id.* at 288. Further, "Pap's still has a concrete stake in the outcome of this case because, to the extent Pap's has an interest in resuming operations, it has an interest in preserving the judgment." *Id.*[6] Finally, the Court recognized that its "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness." *Id.* Thus, it rejected Pap's argument and held that the case was not moot.

---

[6] The Court also recognized that Erie had an "ongoing injury because it [was] barred from enforcing the public nudity provisions of its ordinance." *Id.* If the Court held that the ordinance was constitutional, Erie could "enforce it, and the availability of such relief is sufficient to prevent the case from being moot." *Id.*

No. 11-51041

Unlike the business in *Erie*, in the instant case, JSLG is no longer incorporated under state law due to its failure to pay taxes. Further, here, unlike *Erie*, it is not the party that closed the business now seeking to have the case declared moot.

In *City News & Novelty, Inc. v. City of Waukesha*, the Supreme Court once again addressed the question of mootness when an adult bookstore closed its business. 531 U.S. 278 (2001). In that case, City News & Novelty, Inc. ("City News") operated an adult bookstore that sold sexually explicit material. *Id.* at 281. The City of Waukesha ("Waukesha") required sellers of such material to maintain an adult business license. *Id.* Based on its finding that City News had violated an ordinance, the city council denied City News's application for a renewal of the license. *Id.* at 281-82. City News brought suit, and the state courts rejected the claim that the denial of the license was unconstitutional. *Id.* at 282. After filing its petition for certiorari with the Supreme Court, City News provided notice that it planned to withdraw its renewal application and close its business if Waukesha granted a license to its competitor. *Id.* at 282-83. Waukesha granted an adult business license to the competitor of City News, and thereafter City News ceased its operations and "no longer [sought] to renew its license." *Id.* at 283.

Based on City News's announcement that it did not intend to renew its license, Waukesha argued that the case was moot. *Id.* In response, City News stated that "it 'has never promised not to apply for a license' in the future," and that the Supreme Court's analysis in *Erie* demonstrated that this case was not moot. *Id.* The Supreme Court rejected City News's argument that the claim was not moot and distinguished *Erie* as follows:

> In our view, *Erie* differs critically from this case. In *Erie*, we similarly granted a petition to review a state-court judgment addressing an adult business' First Amendment challenge to a city ordinance. We concluded that the controversy persisted, even

8

though the adult business had shut down. We reached that conclusion, it is true, in part because the business "could again decide to operate." That speculation standing alone, however, did not shield the case from a mootness determination. Another factor figured prominently. The nude dancing entrepreneur in *Erie* sought "to have the case declared moot" after the business had "prevailed below," obtaining a judgment that invalidated Erie's ordinance. Had we accepted the entrepreneur's plea, then consistent with our practice when a case becomes moot on review from a state court, we would have dismissed the petition, leaving intact the judgment below.   Thus, had we declared *Erie* moot, the defendant municipality would have been saddled with an "ongoing injury," *i.e.*, the judgment striking its law. And the plaintiff arguably would have prevailed in an "attemp[t] to manipulate the Court's jurisdiction to insulate a favorable decision from review."

*Id.* at 283-84 (internal citations and quotation marks omitted).  Unlike the adult business in *Erie,* City News "left the fray as a loser, not a winner."  *Id.* at 284. Thus, dismissing the case as moot "does not keep Waukesha under the weight of an adverse judgment, or deprive Waukesha of its victory in state court."  *Id.* Further, dismissing the case as moot does not "reward an arguable manipulation of our jurisdiction" because City News "opposes a declaration of mootness."  *Id.*

Nonetheless, City News argued that it was suffering an ongoing injury because the ordinance barred it from operating as an adult business for several more years.  *Id.*  The Supreme Court was not persuaded that City News had shown an ongoing injury because "a live controversy is not maintained by speculation that City News might be temporarily disabled from reentering a business that City News has left and currently asserts no plan to reenter."  *Id.* at 285.  Thus, the Supreme Court dismissed the case as moot.

Relying on the above-quoted language from the Supreme Court's opinion in *Waukesha*, the D.C. Circuit interpreted the opinion as "strongly support[ing] the principle that a case on appeal normally is rendered moot when the

9

appellant closes its business and, as a result, no longer has a cognizable interest in the outcome of the dispute." *Munsell v. Dep't of Agric.*, 509 F.3d 572, 582 (D.C. Cir. 2007).   The D.C. Circuit further opined that the exception in *Erie* "applies only when the party who prevailed below attempts to 'manipulate the Court's jurisdiction' to avoid having its favorable judgment overturned on appeal." (quoting *Waukesha*, 531 U.S. at 284).

We find persuasive the D.C. Circuit's interpretation of *Erie* and *Waukesha* and apply the principle to the case at bar.   Here, because JSLG closed its business and became a defunct corporation unable to apply for an SOB license, it no longer has a cognizable interest in declaring the City of Waco's SOB ordinance facially unconstitutional.[7]   In other words, JSLG is *not* currently subject to regulation under the SOB ordinance. Accordingly, JSLG's claim—that the ordinance is facially unconstitutional because § 20-40(b)(3), (6) and (7) allow for revocation of a license based solely on the knowledge of an employee—has become moot during the pendency of this appeal.   We therefore lack appellate jurisdiction and DISMISS this claim for declaratory relief as moot.

b.     § 20-40)(b)(1)

JSLG next contends that § 20-40(b)(1) is unconstitutionally vague or overbroad on its face because it does not define how information that is "false or misleading" is material to the application process.   As set forth in detail above, JSLG is not currently subject to regulation under the challenged ordinance and thus no longer has a cognizable interest in declaring the ordinance facially unconstitutional.   Thus, this claim for declaratory relief

---

[7]   Clearly, the exception in *Erie* does not apply because the party who prevailed below, the City, did not cause the case to become moot.  Although the City revoked the SOB license, it was JSLG that closed the business, rendering this claim moot.

No. 11-51041

likewise became moot.  We therefore lack appellate jurisdiction and DISMISS this claim for declaratory relief as MOOT.[8]

### 3.    Damages

Nonetheless, in JSLG's prayer for relief in the complaint, in addition to its request for equitable relief, JSLG expressly (albeit briefly) requested damages.[9] JSLG contends that it incurred damages as a result of the City's unconstitutional revocation of its SOB license.  Although the revocation of the license did not close the nightclub's doors, its effect was to prohibit nude dancing.  Because of the revocation, the City required the dancers to wear "G-Strings and pasties."  JSLG contends that the prohibition of nude dancing caused its customers to stop patronizing its business, and thus the loss of its revenue constitutes monetary damages.  This Court has explained that although time may have rendered moot an appellant's request for injunctive relief, the claim for actual monetary damages incurred as a result of an alleged constitutional violation remains a live claim.  *Henschen v. City of Houston, Tex.,* 959 F.2d 584, 587-88 (5th Cir. 1992); *Opulent Life Church v. City of Holly,* __

---

[8]  We note that, even if the facial challenge to § 20-40(b)(1) had not become moot, JSLG would not be entitled to relief.  Section 20-40(b)(1) provides that an SOB license shall be revoked if: "[a] licensee gave false or misleading information in the material submitted during the application or license renewal process."  JSLG argues that whether information is "misleading" cannot be objectively verified and thus the ordinance allows the city official to subjectively apply the ordinance.  This Court has previously held that an ordinance allowing a city official to revoke an SOB license if the licensee provided "false or misleading information" does not give the official impermissibly broad discretion.  *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298, 1305-06 (5th Cir. 1988), *reversed on other grounds,* 493 U.S. 215 (1990).  We explained that the ordinance "relies on standards that are susceptible of objective measurement and thus consistent with the first amendment."  *Id.* at 1306 (citation and internal quotation marks omitted).  Accordingly, even if this claim had not become moot, our precedent would preclude JSLG's claim that § 20-40(b)(1) is unconstitutionally vague or overbroad on its face.

[9]  JSLG requested to "recover from Defendants, jointly and severally, all of its actual damages, additional damages, exemplary damages, pre-judgment and post-judgment interest as allowed by law, attorney's fees, costs of court, declaratory judgments, and such other and further relief to which it may show itself justly entitled."

No. 11-51041

F.3d __, 2012 WL 4458234, at *4 (5th Cir. 2012) (explaining that "[a] plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot") (quoting Erwin Chemerinsky, Federal Jurisdiction § 2.5.2. (6th ed. 2012)).   Thus, although JSLG's claim for equitable relief is now moot, we must address its claims for damages.

We note that the claim for the amount of damages is rather limited.  At oral argument, counsel explained that JSLG's claim for damages is based on the loss of revenue stemming from the reduction in the amount of clients patronizing Sonny's because the dancers had to wear G-strings and pasties and were not allowed to dance completely nude after the license revocation.  Accordingly, the damages, if any, would only consist of the loss of revenue from the dancers not being allowed to dance completely nude during the revocation period.

C.     JSLG's Capacity to Bring Suit

Subsequent to oral argument before this Court, the panel requested briefing with respect to whether JSLG, a defunct Texas corporation, had the legal right to maintain this appeal.  We have reviewed the briefing and are persuaded that our precedent constrains us to hold that JSLG does have the capacity to maintain this appeal.

It is undisputed that by failing to pay its taxes JSLG forfeited its corporate privileges under Texas law.  However, JSLG had filed the instant lawsuit *prior* to forfeiting its privileges.  This Court has explained that Texas law "bars corporations from filing suit only *after* they have forfeited their right to do business." *Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403 (5th Cir. 2008) (emphasis in opinion).  In *Leavitt*, as in the instant case, the corporation filed suit prior to forfeiting its corporate privileges. *Id*. at 404.  Applying Texas law, this Court held that because the corporation had capacity to bring suit at the time the action began, the corporation "retained capacity and will continue to do

so until the suit's conclusion." *Id.*[10] Relying on certain language in § 171.252 of the Texas Tax Code,[11] the City contends that JSLG does not have the capacity to maintain this suit. In *Leavitt*, however, this Court expressly recognized that particular language and rejected the claim that it deprived the corporation of the capacity to maintain its lawsuit. *Id.* at 403-04. Accordingly, applying the holding in *Leavitt,* because JSLG had the capacity at the time it filed suit against the City, it retains the capacity to maintain this appeal until it is resolved.[12]

### D.    As-Applied Challenge to § 20-40(b)(1)

JSLG also raises an as-applied challenge to the City's finding that JSLG violated § 20-40(b)(1), which, as previously set forth, provides that a license shall be revoked if a "licensee gave false or misleading information in the material submitted during the application or license renewal process." In its letter of revocation, the City quoted from § 20-34(a), which provides that an application for an SOB license:

> must be accompanied by a sketch or diagram showing the configuration of the premises, including a statement of the total floor space occupied by the total business and the total floor space occupied by the sexually oriented business portion of the business. The sketch need not be professionally prepared, but it must show the interior dimensions of the business to an accuracy of plus or minus six inches.

---

[10]    At least one intermediate Texas appellate court has expressly agreed with this Court's interpretation of Texas law in *Leavitt*. *See Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *6 (Tex. App.—Austin, May 27, 2010, pet. denied) (unpublished).

[11]    The City relies on the following language: "If the corporate privileges of a corporation are forfeited under this subchapter . . . the corporation shall be denied the right to sue or defend in a court of this state . . . ." Tex. Tax Code Ann. § 171.252(1).

[12]    The City concedes that if JSLG retains the capacity to maintain this suit, it has the right to be represented by counsel.

The revocation letter further provided that the "sketch or diagram resubmitted by Sonny's BYOB during the 2011 application renewal process is false and misleading because it omits significant changes to the premises. . . . Some of those changes include the addition of two private 'High Roller' rooms, a new DJ booth, and the elimination of a storage room."

With respect to the application for renewal that is at issue, JSLG does not deny that it failed to submit an updated diagram of the club reflecting the changes to the interior configuration of the building. JSLG does not dispute that the requirement to maintain an accurate diagram of the building is related to the City's legitimate interest in safety, fire and rescue concerns. Instead, JSLG's entire argument is that, although § 20-34(a) requires that an initial application for the SOB license must have a diagram of the building, the Code does not expressly require the submission of such a diagram during the annual renewal process. Section 20-37(a) provides that an SOB license expires every year on December 31st. It further provides that a "license may be renewed by submission to the building official of an application on the form prescribed by such official and payment of a nonrefundable renewal processing fee of $25.00 at least 30 days in advance of the expiration date." § 20-37(a). It also provides that a "renewal application shall be reviewed in accordance with the same standards and requirements for an original license application, as set out in section 20-36." *Id.* Thus, although § 20-37(a) does not expressly require the submission of an updated diagram, it does state that the renewal application will be reviewed under the same requirements as an original license application under § 20-36. Section 20-36(a)(3) provides that a license will not issue if an "applicant has failed to provide information reasonably necessary for issuance of the license or has falsely answered a question or request for information on the application form." Although it is not clear, it is arguably implicit that a current diagram of the building that houses the SOB is necessary information

14

for renewal of the license in that a current diagram was necessary for the initial issuance of the license.  Put another way, by expressly stating that a renewal application will be reviewed under the same standards and requirements as the initial application, the renewal provision arguably could be read as encompassing a requirement that the application for renewal should be accompanied by a current diagram of the building.

Moreover, even if the written renewal provision does not implicitly require a current diagram, as a matter of practice, the evidence shows that the parties treated the renewal process as if there was such a requirement.  In 2008, with its renewal application, JSLG submitted an updated diagram, which displayed how the building had been remodeled after a fire had occurred.  Subsequently, during the 2009 renewal application process, JSLG submitted a letter representing that the building had not undergone any remodeling since the SOB license had been last renewed.  Under these circumstances, we reject JSLG's contention that the district court erred in ruling that the renewal process required the submission of a current diagram of the building.  More importantly, JSLG has failed to show that the requirement was unconstitutionally applied to it.  Simply put, JSLG has not shown that the City's revocation of JSLG's SOB license based on its failure to submit a current building diagram was unconstitutional.

At oral argument, JSLG conceded that if only one provision of the ordinance survives as a constitutional basis for the revocation of its license, its claim for damages is foreclosed.  Because we conclude that JSLG has not shown that § 20-40(b)(1) was unconstitutionally applied as a basis for its license revocation, it is not entitled to damages, and we need not reach any remaining constitutional challenge.

III.   CONCLUSION

15

No. 11-51041

For the above reasons, we DISMISS for lack of appellate jurisdiction the claims for injunctive and declaratory relief and AFFIRM the district court's judgment as to the claim for damages.

DISMISSED IN PART and AFFIRMED in part.